HOOKS et al. v. NEILL et al. (No. 9320.)

Court of Civil Appeals of Texas. Galveston.
July 18, 1929.

Rehearing Denied Oct. 24, 1929.

Gordon O. McGehee and R. H. Ward, both of Houston, for appellants.

· Kennerly, Williams, Lee, Hill & Sears, of Houston, and Hill, Smith & Neill, of San Angelo, for appellees.

LANE, J. On the 18th day of November, 1902, Stephen Jackson, who owned 43 acres of land, a part of the Stephen Jackson league, near the town of Sour Lake, Tex., executed a deed wherein it is recited that "for and in consideration of the sum of twelve hundred ($1,200) dollars to me in hand paid by *Mrs. M. J. Mackey* and *Mrs. Dora M. Neill*, and *C. C. Todd*, have granted, sold and conveyed, and by these presents do grant, sell and convey unto the said Mrs. M. J. Mackey and Mrs. Dora M. Neill of San Antonio [here a 1-acre tract of land, a part of the 43-acre tract, is described by metes and bounds], "to have and to hold the above described premises together with all and singular the rights and appurtenances thereto in anywise belonging unto the said *Mrs. M. J. Mackey* and *Mrs. Dora M. Neill*, their heirs and assigns forever. And I do hereby bind myself, my heirs, executors and administrators to warrant and forever defend all and singular the said premises unto the said *Mrs. M. J. Mackey* and *Mrs. Dora M. Neill*, their heirs and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof." (Italics ours.)

It will be noticed that, while the conveyance recites that C. C. Todd paid a part of the consideration therefor, the land was in fact

conveyed to Mrs. Mackey and Mrs. Neill only. On the 29th day of April, 1903, C. C. Todd executed and delivered to Mrs. Mary Mackey a deed, wherein it is recited:

"That I, C. C. Todd, a citizen of Beaumont, Texas, of the county of Jefferson, state of Texas, for and in consideration of the sum of two hundred sixty-six and two-thirds ($266⅔) dollars by Mrs. Mary J. Mackey of San Antonio, Texas and Co. of Bexar, have granted, sold and conveyed, and by these presents do grant, sell and convey unto the said Mary J. Mackey of the County of Bexar and State of Texas, all of my interest in that certain lot or parcel and tract of land being situated near Sour Lake, Texas, and which is a part of a 43-acre survey of land deeded to me in a subdivision among the heirs of Stephen Jackson, Sr., deceased, and which is a part of the Stephen Jackson league, and the metes and boundaries are more fully described as follows, to wit: [Same description as contained in previous deed, to which reference is made.] Including within said bounds all of my interest, that interest being one-third of an acre (⅓) and no more.

"To have and to hold the above described premises together with all and singular the rights and appurtenances thereto in anywise belonging unto the said Mary J. Mackey, her heirs and assigns forever; and I do hereby bind myself, my heirs, executors and administrators to warrant and forever defend all and singular the said premises unto the said Mary J. Mackey, her heirs and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof."

This recital is followed by the habendum and general warranty clauses. Upon the death of Mrs. Mackey, such interest as she owned in the one acre of land became vested in James Mackey, and upon the death of Mrs. Dora Neill such interest in said land as she owned became vested in Robert T. Neill, and his sister, Mrs. Dora Neill Raymond. On the 30th day of July, 1925, James Mackey by special warranty deed conveyed all title and interest he owned in the one acre of land to R. L. Durham, trustee. On the 11th day of August, 1925, Robert T. Neill and Mrs. Dora Neill Raymond by special warranty deed conveyed to R. L. Durham, trustee, all title and interest they owned in the one acre of land, except such as was reserved by the recital in the deed as follows:

"It is hereby expressly agreed and understood and made a part of this deed that there is excepted and reserved to the grantors herein a one thirty-second part of all' oil on and under the said land and premises herein described and conveyed, which shall be delivered to the grantors on the part of the land where produced. The grantors, however, give the grantee and his assigns the privilege of buying said one thirty-second part of said oil at the market price which is paid for oil of like character in the same vicinity. Settle-

ment shall be made with the grantors on or before the 20th day of each month for oil extracted and saved during the preceding calendar month."

On the 2d day of October, 1925, R. L. Durham, trustee, by warranty deed conveyed the one acre of land involved to C. A. Kelly, wherein it is recited as follows:

"Whereas, heretofore, to wit, on the 30th day of July, 1925, James R. Mackey, of Bexar county, Texas, conveyed to R. L. Durham, trustee, a certain tract or parcel of land hereinafter described; and

"Whereas, on the ——— day of August, A. D. 1925, Robert T. Neill and Dora Neill Raymond ——— to R. L. Durham, trustee, a certain tract or parcel of land, both of said deeds being duly recorded in the Deed Records of Hardin county, Texas. [Here follows description];

"Whereas, said title to said above described premises was placed in the name of R. L. Durham, trustee, for the use and benefit of C. A. Kelly, of Harris County, Texas; and,

"Whereas, said C. A. Kelly has paid the purchase money for same:

"Now, therefore, know all men by these presents that I, R. L. Durham, trustee as aforesaid, for and in consideration of a good, valid, and valuable consideration to me in hand paid by C. A. Kelly, have bargained, sold, and conveyed, and by these presents do bargain, sell, and convey unto the said C. A. Kelly all the right, title and interest that I acquired as trustee by virtue of said deed from Frank B. Warner to R. L. Durham, trustee.
* * *

"It is expressly understood, however, that there is reserved from this conveyance a one-sixteenth (1/16) of all oil and gas produced, saved and sold off of said premises, which one-sixteenth (1/16) of said oil and gas is to be run to the credit of the said Frank B. Warner in any pipe lines with which any wells drilled on said premises may be connected."

This deed was filed for record October 23, 1925. On the 21st day of October, 1925, R. L. Durham, trustee, conveyed by his special warranty deed all his right, title, and interest in and to the one acre of land to the Oxford Oil Company. Such deed was filed for record December 19, 1925. The Oxford Oil Company conveyed a one-fourth interest in the one acre to R. H. Ward.

On the 9th day of December, 1925, R. L. Durham executed and delivered to C. A. Kelly a correction deed to the one acre, wherein it is recited that he (Durham) held the title to the land in trust for Kelly, who paid the purchase money for same, and wherein it is recited as follows:

"Whereas, in the last paragraph of said deed from R. L. Durham, trustee, to the said C. A. Kelly, it is stated that there is reserved from said conveyance one-sixteenth of all the oil and gas produced, saved and sold off of said premises, which one-sixteenth of said oil

and gas is to be run to the credit of Frank B. Warner in any pipe line to which said wells drilled on said premises may be connected; and

"Whereas, said recitation in said deed is a mistake, and that the said paragraph should read that there is reserved a one thirty-second royalty to Robert T. Neill and Dora Neill Raymond, instead of Frank B. Warner:

"Therefore, know all men by these presents, that I, R. L. Durham, trustee, of the county of Harris and state of Texas, for and in consideration of a good, valid, and valuable consideration to me in hand paid by the said C. A. Kelly, receipt of which is hereby acknowledged, and for the purpose of correcting the error heretofore described, have bargained, sold, and conveyed, and by these presents do bargain, sell, and convey, unto the said C. A. Kelly all that certain tract or parcel of land hereinbefore described.

"It is however expressly understood that there is reserved from this conveyance a one thirty-second of all oil and gas produced, saved and sold off of said premises, which one thirty-second of said oil and gas is to be run to the credit of said Robert T. Neill and Dora Neill Raymond in any pipe lines to which any well drilled upon said premises may be connected."

As both the Oxford Oil Company and Kelly were claiming the one acre under their respective deeds from Durham, and as both desired to have the land developed for the discovery of oil, they, on the 14th day of June, 1926, by agreement between them, made separate lease contracts with the Humphreys Corporation for such development; by the terms of such contracts Humphreys Corporation was to pay to Kelly and the Oxford Oil Company a one-sixteenth royalty of all oil and gas produced from the land. It was also agreed among said parties that the oil coming to Kelly and the Oxford Company should be deposited with the Guaranty Trust Company until their respective rights to the land should be determined by the courts or by compromise. Immediately after such agreement the Humphreys Corporation took possession of the land, produced large quantities of oil therefrom, which it sold to the Gulf Pipe Line Company.

On or about the 12th day of July, 1926, Kelly and the Oxford Company adjusted and settled their differences by an instrument in writing, whereby it was agreed that the Oxford Oil Company should convey to Kelly all of its right, title, and interest in the land subject to the rights of the Oil Company to receive an undivided one-third of all the royalties coming from the development made of the land by the Humphreys Oil Company. Such agreement was carried out by them, and the land was conveyed by the Oxford Oil Company to Kelly, and on July 26, 1926, Kelly conveyed all of his right in and to the land to Charles G. Hooks, subject to the rights of the Oxford Company to the one-third roy-

alties above mentioned. It is agreed by the parties that, while R. H. Ward was not a party to the agreement and settlement entered into between Kelly, the Oxford Company, and the Humphreys Company, he ratified the same with the understanding that he was to be the owner of one-fourth of the one-third royalties which were to go to the Oxford Company.

At the time of the institution of the suit hereinafter mentioned the Humphreys Company was drilling an additional well for oil on the land, and if oil is produced therefrom it will be delivered to the Gulf Pipe Line Company and held by it for those entitled to the same.

Charles G. Hooks instituted this suit against the Gulf Pipe Line Company, the Oxford Oil Company, Robert T. Neill, Mrs. Dora Neill Raymond, a feme sole, and R. H. Ward, and among other things alleged the matters stated above as facts, and further alleged that he and the Oxford Oil Company and R. H. Ward, by virtue of the deed from Stephen Jackson to Mrs. Mary J. Mackey and Mrs. Dora M. Neill, and by virtue of the deed from C. C. Todd to Mrs. Mary J. Mackey, claimed that the said defendants Robert T. Neill and his sister, Mrs. Dora Neill Raymond, only owned a one-third interest in this tract of land, and when they conveyed all of their right, title, and interest in this land to said Durham, trustee, the only interest they conveyed to Durham was their undivided one-third interest in the land, and the exception and reservation in the deed to R. L. Durham, trustee, hereinabove set out, only reserved to Robert T. Neill and Mrs. Dora Neill Raymond a one thirty-second interest of the oil in their one-third interest in the *land and premises conveyed* to R. L. Durham, trustee, and did not have the effect of reserving to them a one thirty-second interest in the entire oil produced and to be produced from the land and premises set forth and described in the petition; that, notwithstanding the plain purport and intent of said exception and reservation in the deed, defendants Robert T. Neill and his sister, Mrs. Dora Neill Raymond, are claiming and insisting that by virtue of said exception or reservation in their deed they are entitled to receive a one thirty-second interest in all of the oil produced on the land in controversy, whereas plaintiff and defendants Oxford Oil Company and R. H. Ward contend that the interest of Robert T. Neill and Mrs. Dora Neill Raymond amounts only to one ninety-sixth of the oil produced and to be produced from said land and premises; that he endeavored to get division orders signed by defendants Robert T. Neill and Mrs. Dora Neill Raymond, whereby they would be entitled to receive a one ninety-sixth of the oil produced on the land, in order that plaintiff and the other defendants might receive their proper proportion of the royalties, but that the defendants Robert T. Neill and Dora Neill Raymond refused to sign such division

orders, and insist that they are entitled to receive from the Gulf Pipe Line Company their one thirty-second interest of all the oil produced and to be produced by the Humphreys Corporation and run through the pipe line of defendant Gulf Pipe Line Company; that the Gulf Pipe Line Company has no interest in this suit, and is a mere stakeholder, and is perfectly willing to pay for all the oil received and run by it to the parties to this suit in proportion to their respective interests, whenever the same can be adjusted between the parties to this suit, and the defendant Robert T. Neill and his sister, Mrs. Dora Neill Raymond; that, in consequence of the claim of the defendants Robert T. Neill and Mrs. Dora Neill Raymond, the defendant Gulf Pipe Line Company has retained in its possession a one thirty-second interest of all the oil produced from the land, and will continue in the future to so do, until the claim of the defendants Robert T. Neill and Mrs. Dora Neill Raymond can be settled; that if he be wrong in his claim that defendants Robert T. Neill and Mrs. Dora Neill Raymond are only entitled to a one ninety-sixth of the oil produced and to be produced from the land in controversy by virtue of said reservation or exception to the deed to Durham, trustee, then, in the alternative, plaintiff avers that under no circumstances were the defendants Robert T. Neill and Mrs. Dora Neill Raymond the owners of more than one-half of the land and premises, and were only entitled, by virtue of the reservation or exception in their deed to Durham, trustee, to claim and receive a one sixty-fourth of the oil produced or to be produced and run through the pipe line of the defendant Gulf Pipe Line Company.

The plaintiff further alleged that, while Robert T. Neill and Mrs. Dora Neill Raymond were only entitled to one ninety-sixth of the oil produced from the one acre of land, the Gulf Pipe Line Company is unlawfully retaining and refusing to account for and pay to the Oxford Oil Company, R. H. Ward, and plaintiff their respective portions of such oil, and will continue such refusal until the provisions of the deed from the Neills to Durham, trustee, can be construed by the court. He further alleged that the Humphreys Corporation had produced from the land 40,000 barrels of oil, of the market value of $1.90 per barrel, and that it will continue to produce large quantities of oil from the land.

The plaintiff asked that the court determine by a decree that Robert T. Neill and Mrs. Dora Neill Raymond are only entitled to one ninety-sixth of the oil produced and to be produced from the land; that he have judgment against the Gulf Pipe Line Company, requiring it to pay to him his proper proportion of the one thirty-second of the oil now in possession of said company, together with that which it may receive in the future, and that an accounting be had in order to determine

the exact amount of oil to which he might be entitled. The Oxford Oil Company and R. H. Ward adopted the allegations and prayer made by the plaintiff, and asked that they be adjudged their respective interests in the oil, and that they be awarded a judgment against the Gulf Pipe Line Company for their respective interests in said oil.

The defendants Robert T. Neill and Mrs. Dora Neill Raymond, hereinbefore referred to as the Neills, answered by general demurrer, general denial, and by averments that they jointly owned a one thirty-second of all the oil on and under the one acre of land in controversy and the proceeds of the sale of the one thirty-second part of such oil sold by the Gulf Pipe Line Company, which are being held by said company and which amounted to the sum of $2,435.66 on December 1, 1927. They prayed for a decree establishing their rights, title, and interest in and to a full undivided one thirty-second of all oil theretofore produced and to be thereafter produced from the land in controversy, and for judgment against the Pipe Line Company for the full amount of the proceeds of the sale of said one thirty-second part of said oil sold by the Pipe Line Company, and for a decree establishing in them title and ownership to the one thirty-second part of such proceeds as against plaintiffs, Charles G. Hooks, the Oxford Oil Company, and R. H. Ward.

These defendants also filed their cross-action against the Gulf Pipe Line Company, the Oxford Oil Company, R. H. Ward, and R. L. Durham, individually and as trustee under the deed executed by them to Durham, trustee. They alleged that said deed was executed and delivered by them pursuant to an explicit understanding between them and R. L. Durham that there should be reserved to them and excepted from the conveyance a full one thirty-second part of all oil on and under the land conveyed, and that such reservation and exception should be expressed in the deed. They averred that, if such understanding is not clearly and adequately expressed in the deed or expresses some contrary purpose, a failure to have words clearly expressing such understanding written into the deed was the result of mutual mistake, by reason whereof the deed should be so reformed and corrected as to express the true intent and agreement of the parties. They averred that R. L. Durham, trustee, was acting for and in behalf of all the parties to the suit, except the Gulf Pipe Line Company. They prayed for an entry of judgment correcting and reforming the deed in the particulars above specified.

The Gulf Pipe Line Company answered that it had in its possession the sum of $2,-435.66, claimed by Robert T. Neill and Mrs. Dora Neill Raymond on the one side, and the plaintiff Hooks and the defendants Oxford Oil Company, and R. H. Ward on the other side, and that on account of such respective claims, it (the Gulf Pipe Line Company) could

not make payment of such sum, and it asked the court to determine by a decree to whom the same should be paid.

Plaintiff Charles G. Hooks, by supplemental petition, answering the cross-action of Neill and Mrs. Raymond, averred that the deed from Neill and Mrs. Raymond to Durham, trustee, is plain and unambiguous upon its face, and.conveys only the right, title, and interest in the land in controversy owned by such grantors, which he alleges was a one-third interest, or at most a one-half interest, dependent upon whether Mrs. Mackey owned a half interest only, or a two-thirds interest thereof; that the legal effect of the exception and reservation clause in said deed was to reserve to the grantors a one thirty-second or a one ninety-sixth interest in the oil on and under the land and premises conveyed, dependent upon the interest held and owned by them in such land. The Oxford Oil Company and R. H. Ward adopted the allegations of the plaintiff's supplemental petition.

On the 4th day of October, 1928, upon a request by Robert Neill and Mrs. Raymond, an interlocutory judgment by default was rendered in their favor as against R. L. Durham, individually and as trustee, on their cross-action. The cause was tried by the court without a jury, and judgment incorporating the aforesaid interlocutory judgment rendered against Durham was rendered. By such judgment it was decreed that the plaintiff Charles G. Hooks take nothing by his suit against the defendants Gulf Pipe Line Company, Oxford Oil Company, R. H. Ward, Robert T. Neill, and Mrs. Dora Neill Raymond; that the defendants Oxford Oil Company and R. H. Ward take nothing as against Robert T. Neill, Mrs. Dora Neill Raymond, and the Gulf Pipe Line Company; and that Robert T. Neill and Mrs. Dora Neill Raymond recover on their cross-action against R. L. Durham, individually and as trustee, Charles G. Hooks, Oxford Oil Company, R. H. Ward, and Gulf Pipe Line Company for the sum of money in the possession of the Gulf Pipe Line Company as the proceeds of a sale of the one thirty-second of all the oil produced from the land in controversy.

It is recited in the judgment that Robert T. Neill and Mrs. Dora Neill Raymond made, executed, and delivered their certain deed conveying all their right, title, and interest in the land in controversy, describing the same by metes and bounds, pursuant to an explicit agreement, theretofore made by and between them and R. L. Durham, individually and as trustee, that there should be reserved to grantors and excepted from such conveyance a full one thirty-second part of all the oil on and under the land in controversy, and that such oil should be delivered to grantors, etc. It was further decreed that the deed executed by Neill and Mrs. Raymond be corrected and reformed as of date August 11, 1925, so as to expressly reserve to Neill and

Mrs. Raymond a full one thirty-second part of all the oil on and under the one acre of land.

From the judgment so rendered, Charles G. Hooks, Oxford Oil Company, and R. H. Ward have appealed.

The first contention of appellants is that by the deed of Stephen Jackson to Mrs. Neill and Mrs. Mackey they took a one-third interest each in the land in controversy, and that C. C. Todd, who paid a part of the consideration to Jackson for the conveyance, took the other one-third interest therein, which he passed to Mrs. Mackey by his deed to her; that the respective interests so acquired remained in Mrs. Neill and Mrs. Mackey at the time of the deaths of both of them, and upon their deaths such title passed to their heirs hereinbefore named, but that in no event could it be held that, by the deed of Jackson to Mrs. Neill and Mrs. Mackey, Mrs. Neill took more than a one-half undivided part interest in the land and premises conveyed.

Upon such contention they base the further contention that, by the reservation clause in the deed of Robert T. Neill and Mrs. Dora Neill Raymond to Durham, trustee, such grantors reserved and excepted from the conveyance only a one ninety-sixth of all the oil on and under the entire tract of land, or one thirty-second of the oil on or under the premises conveyed, which was an undivided one-third of the land; but, if it be conceded that the Neills took one-half undivided interest in the land under the Jackson deed, then, in that event, Robert T. Neill and Mrs. Raymond, by the reservation clause in their deed to Durham, reserved and excepted from such conveyance a one sixty-fourth part or interest in all the oil on or under the whole tract of land, or one thirty-second part of the oil on or under the premises conveyed, which was an undivided one-half part of the land.

Upon such contention they further contend that the court erred in awarding to Robert T. Neill and Mrs. Raymond a one thirty-second of all the oil on or under the whole tract of land, or the proceeds of the sale of such one thirty-second part of the oil taken from the whole tract.

Appellees, on the other hand, contend that, by the deed of Jackson to Mrs. Neill and Mrs. Mackey, title to an undivided one-half of the land in controversy passed to and was vested in each of the grantees, to the exclusion of C. C. Todd, but that by virtue of the reservation clause in their deed to Durham a one thirty-second interest in the entire minerals, including oil, on and under the whole acre tract belonged to them.

■ After a careful consideration of the provisions of the deed of Jackson to Mrs. Neill and Mrs. Mackey, we have reached the conclusion that by such deed title to the land

conveyed vested one-half in Mrs. Neill and one-half in Mrs. Mackey, each owning a one-half undivided interest therein; and after a careful examination and consideration of the undisputed evidence we have also reached the conclusion that, in the negotiations between Durham and those representing the Oxford Oil Company and C. A. Kelly and the Neills, all parties were negotiating under the understanding that the Neills were selling and the grantees were purchasing a one-half undivided interest in the land, subject to the reservation clause inserted in the deed of the Neills to Durham.

■ Having reached the conclusions above stated, we shall, in the decision and disposition of the other issues presented, do so under the holding that by the deed of the Neills to Durham they conveyed to Durham, trustee, a one-half undivided interest in the land in controversy, subject only to the reservation clause set out in said deed.

We are now brought to a consideration of the effect of such reservation clause; that is, as to whether by such clause the Neills reserved to themselves a one thirty-second part of all the oil on and under the whole tract of land, or whether they reserved thereby only a one thirty-second part of the oil to be produced from the interest or premises owned and conveyed by them, which was a one-half undivided interest in the land in controversy, and of the question as to the right of appellees, the Neills, under their pleadings and the evidence, to a decree reforming the deed by which they conveyed their interest in the land to Durham, by inserting therein a clause clearly stating that a one thirty-second of all the oil on and under the whole of the land is reserved and excepted from the conveyance. We shall dispose of these two questions in the reverse order as mentioned.

Appellants contend that the deed as a whole, including the reservation or exception clause, is free from ambiguity and uncertainty, and that according to the plain import and meaning of the language employed therein it should be, as a matter of law, construed as only reserving and excepting, at most, from the conveyance, a one sixty-fourth interest of the minerals on or under the land, as the deed purports to convey only an undivided one-half interest in the land, and did not purport to convey a greater interest than the Neills actually held, for it is expressly stated in the deed that "there is excepted and reserved to the grantors herein a one thirty-second of all of the oil on and under said land and premises herein described *and conveyed*."

The appellees, however, while contending that the language used is not uncertain or ambiguous, and that it clearly imports that grantors reserved and excepted from the conveyance one thirty-second of all oil on and under the entire tract of land, insist that, if in fact it does not clearly import such reservation and exception, they are entitled to the reformation thereof prayed for by them.

We feel disposed to agree with the contention of both appellants and appellees that the language used in the reservation clause of the deed in question is not uncertain and ambiguous. The language so used clearly imports—in fact, it clearly states—that grantors reserve and except from the conveyance one thirty-second part of all oil on and under the land and premises thereby conveyed. Now, it is clear, from all the facts and circumstances confronting the parties at the time of the execution of the deed, that the premises conveyed was at most not more than a one-half undivided part of the land in controversy. In Harris v. Cobb, 49 W. Va. 350, 38 S. E. 559, a case wherein a Mrs. Meyers, who owned 52 acres of land, sold the same to a Mrs. Harris and in the deed reserved to herself one-half of the usual royalties of one-eighth or one-sixteenth of all the oil on and under the land conveyed. In that case the court said:

"A conveyance by Mrs. Harris of the whole tract without mention of the reserved and excepted one-sixteenth part of the oil retained by Mrs. Meyers would in no wise disturb or affect the right or title of Mrs. Meyers. Mrs. Harris' deed was a matter of record. The fifteen-sixteenths of the oil was vested in fee absolutely in Elizabeth J. Harris, and a sale by her of the same with a reservation and exception of any designated part or proportion of it could not apply to that which she never had, but was still vested in her vendor. Any reservation or exception made to herself must be of her own. How could she reserve to herself that which she never owned? In Baker v. McDowell, 3 Watts & S. (Pa.) 358, B., who was seized in fee of a tract of land, subject to an outstanding title to one-half of all iron ore found in the premises, conveyed the same to H. in fee, excepting and reserving to the said B. his heirs and assigns, the one half of all iron ore found on the land. Held to be a reservation to the grantor himself of that half of the ore which was vested in him, and not a mere notice or reservation of the other half which was outstanding."

■ We think the holding in the case from which we have quoted is sound and should be followed, and, as it is not contended by appellees that they owned any part of the tract of land in controversy in excess of one-half thereof, the exceptions or reservations embraced in their deed to Durham must be held to refer only to the interest which they have in the land and ore which they conveyed.

The clear import and meaning of the words used by the Neills in their deed to Durham, the title to all their right, title, and interest in the land, which was a one-half undivided interest thereof, such deed passed the title to

such interest to Durham, subject only to the reservation of a one thirty-second of one-half of the oil on and under the tract of land in controversy, or a one sixty-fourth of all the oil on and under the entire tract, and unless appellees have shown, by competent evidence, under their plea of mutual mistake, that before the execution and delivery of their deed to Durham it was agreed and understood between them and Durham that they were to retain, reserve, and except from the conveyance a full one thirty-second of all oil on and under the entire tract in controversy, and that the failure to insert in the deed a clause to that effect was omitted by a mutual mistake of the grantors and grantee, they are not entitled to a recovery of more than a one sixty-fourth part of all of the oil on and under the entire one acre of land, or its value, if taken from the land.

■ We have been unable to find in the record any evidence to support appellees' asserted mutual mistake. The negotiations between Robert T. Neill, for himself and his sister, on the one side, and R. H. Ward, attorney for Oxford Oil Company, acting for R. L. Durham, trustee, is shown by the several letters which passed between Robert T. Neill and R. H. Ward. It is shown by such letters and the testimony of Neill that Ward prepared a deed for Neill and his sister to sign, conveying the interest held by Robert T. Neill and his sister, Mrs. Raymond, in the one acre of land in controversy, which contains no reservation whatever. After receipt of such deed, and after several letters had passed between Ward and Neill, Neill added to the deed sent to him by Ward the reservation appearing in the deed from the Neills to Durham, which we have hereinbefore set out and many times referred to. Neill testified on direct examination that he adopted deed as prepared by Ward; that he took that deed and used it, by adding thereto the exception or reservation appearing in the deed which he and Mrs. Raymond executed, and which he delivered to Durham; that, before the deed was executed and delivered to Durham, he (Durham) agreed to give the Neills a one thirty-second of the oil on and under the land, and that he (Neill) agreed to this proposition.

Continuing, he said: "I then got hold of a blank deed, and I explained to Mr. Durham how I was going to draw that exception, and he said that was satisfactory." Now, following this conversation, Neill wrote into the deed the words there found, signifying the understanding of the agreement entered into between him and Durham relative to the proposition of the oil to be reserved and excepted from the conveyance. The deed, however, was not delivered to Durham, but was mailed to R. H. Ward at Houston, after he had sent Neill two checks of the Oxford Oil Company for $67.50 in payment for the in-

terest in the land held by the Neills, which they conveyed to Durham as trustee. On cross-examination, Robert T. Neill testified that he did not deliver the deed to Durham in person; that Durham was not present at the time the deed was drawn; that when he stated on direct examination that he had delivered the deed to Durham, he meant he delivered it to Durham by forwarding it to his attorney; that he sent it to Judge Ward at Houston by mail.

It is shown that the date on which Durham negotiated with Neill in person was August 10, 1925. In a letter written by Neill to Judge R. H. Ward, of date August 26, 1925, he said: "I am in receipt of yours of the 24th, returning cashier's check in the sum of $67.50, with request that I indorse it over to you. In view of the fact that I sent you the deed yesterday, reciting a consideration of twice that amount, it occurs to me that you may * * * send me another one [check] in like amount. I am, therefore, holding this check of $67.50 for the present, as it seems the expedient course." It is apparent from this letter that the deed was not delivered to Durham at the time he saw Neill on August 10, or at any other time, but that it was sent to Judge Ward on the 25th of August, 1925, 15 days after Neill saw Durham and told him what exception he (Neill) would insert in the deed relative to the oil, and to which exception, as written, Durham agreed.

■ Appellees assume that appellants hold under the correction deed from Durham to C. A. Kelley, wherein the exception and reservation claimed by appellees is specially recognized, and wherein it is recited that it is "expressly understood that there is reserved from the conveyance a one thirty-second ($\frac{1}{32}$) of all oil and gas produced, saved and sold off of said premises," and upon such assumption contend that appellant took title subject to the reservation recited in such correction deed. In such assumption and contention appellees are in error. The correction deed has reference to the original deed of Durham to Kelley, only it in no way undertakes to correct the recitals in the deed from Durham to the Oxford Oil Company.

■ It is elementary that the declarations of a grantee after he has parted with his title and possession are never admissible, and a grantee cannot make an admission, after he has sold his interest in the land, in disparagement of the deed by which he acquired title. Lott v. Kaiser, 61 Tex. 665; Lacoste v. Bexar County, 28 Tex. 420, at page 224; Thompson v. Herring, 27 Tex. 285; Smith v. Gillum, 80 Tex. 126, 15 S. W. 794; Clark v. Wells, 215 Ky. 128, 284 S. W. 91, 93.

■■ The letters and telegrams from Durham to Neill, after he had parted with the title to the land, in disparagement of the deed by which he acquired the title, were inadmissible and incompetent to prove the intention

540

of the parties in the execution of the deed; so, also, was the correction deed to Kelley, especially so as against appellants, who hold under the Oxford Oil Company title. There is no evidence to support appellees' plea of mutual mistake in the preparation of the deed from the Neills to Kelley. Robert T. Neill wrote the deed, and wrote into it the very words he intended to write, and which he even new contends clearly expresses the agreement entered into between him and Durham, trustee, prior to the preparation of the deed. The deed was executed and delivered just as he prepared it.

■ If, however, we should concede that the recitals made by Durham in his correction deed to Kelley in disparagement of his title acquired from the Neills, after he had parted with his title, were admissible and competent evidence as against Kelley, we would nevertheless hold that would not affect the title of appellants, who hold under the deed from Durham to the Oxford Oil Company. The deed from Durham to Kelley, though executed prior to the execution of his deed to the Oxford Oil Company, was void as to the Oxford Company, as Kelley's deed had not been filed for record until after Durham had, for a valuable consideration, conveyed the land to the Oxford Company.

By article 6627, Revised Statutes of 1925, it is provided as follows: "All bargains, sales and other conveyances whatever, of any land, tenements and hereditaments, whether they may be made for passing any estate of freehold of inheritance or for a term of years * * * shall be void as to all creditors and subsequent purchasers for a valuable consideration without notice, unless they shall be acknowledged or proved and filed with the clerk, to be recorded as required by law." By virtue of such statute, the Oxford Company acquired title to the interest of the Neills in the one acre of land, superior to any title thereto conveyed to Kelley by Durham.

It is agreed that one fourth of the oil reserved to the Oxford Company in its conveyance to Kelley passed to, and is owned by, R. H. Ward. Such being the state of the title to the oil property or premises and the oil thereunder or thereon, conveyed by the Neills to Durham, up to the time Kelley conveyed all his interest to Charles G. Hooks, he (Hooks) holds title to the whole of the property or premises, and the oil thereon or thereunder, together with the money in possession of the Gulf Pipe Line Company, subject only to that reserved by the deed of the Neills to Durham, which we have found, from the undisputed evidence, to be a one sixty-fourth part of the oil on and under the entire one acre of land, and one-half of the proceeds of the sale of oil taken from the land now in possession of the Gulf Pipe Line Company,

and to that reserved to the Oxford Oil Company, in its conveyance to Kelley, which we have found from the undisputed evidence to be one-third of $63/64$ of the oil on and under the land, and one-third of one-half of the money in possession of the Gulf Pipe Line Company as the proceeds of a sale made of oil taken from the land, which said one-third of such oil and money is owned, three-fourths by the Oxford Oil Company and one-fourth by R. H. Ward.

Having reached the conclusions above expressed, it is ordered that the judgment of the trial court be and the same is here reformed, so as to decree to the several parties their respective interests in the oil on and under the premises in controversy, and their respective portions of the funds in possession of the Gulf Pipe Line Company as proceeds of the sale of oil produced from the land, as indicated by what we have said above, and that the judgment, as so reformed, be affirmed.

Reformed and affirmed.