James R. AVERYT, Individually and as Trustee for R.M. Hopkins, Jr., Petitioner,

v.

GRANDE, INC., Respondent.

No. C–4009.

Supreme Court of Texas.

July 2, 1986.

Rehearing Denied Nov. 5, 1986.

Christie Condara, Krist, Kinney, Pucket & Riedmueller, Houston, for petitioner.

William J. Ehlert, Spinn, Ehlert, Spinn, Weisler & Weisler, Brenham, for respondent.

SPEARS, Justice.

The issue in this declaratory judgment action is whether a mineral reservation in a general warranty deed reserves a fraction of the entire mineral estate or only a fraction of the undivided one-half mineral interest owned and conveyed by the grantor. The trial court held that the reservation reserved a fraction of the entire mineral estate. The court of appeals affirmed. 686 S.W.2d 632. We affirm.

On September 30, 1977, Respondent Grande, Inc. conveyed the real property in question to the Fogelmans. The Fogelmans then conveyed the property to Petitioner James R. Averyt, trustee for R.M. Hopkins, Jr. Averyt, individually and as Hopkin's trustee, sued to determine what portion of the mineral interest Grande conveyed to the Fogelmans.

The Grande to Fogelman deed contains the following pertinent provisions:

[T]hat Grande, Inc. ... have GRANTED, SOLD and CONVEYED, ... unto the said Gordon V. Fogelman and wife, Clarice E. Fogelman, ... the following described real estate:

FIRST TRACT:

All that certain tract or parcel of land, situated in Fayette County, Texas, ....

. . . .

[C]ontaining 86.82 acres of land.

SECOND TRACT:

An undivided ½ interest in and to all that certain tract or parcel of land, situated in Fayette County, Texas, ....

. . . .

[C]ontaining 0.03 acres of land.

LESS, HOWEVER, AND SUBJECT TO *an undivided ½ interest in the oil, gas, sulphur, and all other minerals,* described in that deed from Rubie Keilers and Annie Keilers, to Texas Osage Cooperative Royalty Pool, et al, dated May 2, 1930, and recorded in Volume 152, Pages

75–76, Deed Records of Fayette County, Texas.

. . . .

*There is hereby excepted from this conveyance and reserved to Grantor, its successors and assigns, an undivided ¼ th of the royalty covering all of the oil, gas and other minerals,* including but not limited to uranium, coal, lignite, iron, gold, silver, and all other minerals, whether or not now known to be valuable and whether by drilling, strip mining, or any other method, *in, to and under or that may be produced from the lands above described. . . .*

. . . .

TO HAVE AND TO HOLD the above described premises, together with all and singular, the rights and appurtenances thereto in any wise belonging unto the said Gordon V. Fogelman and wife, Clarice E. Fogelman, their heirs and assigns, forever. And Grande, Inc., does hereby bind itself and its successors, to warrant and forever defend, all and singular, the said premises unto the said Gordon V. Fogelman and wife, Clarice E. Fogelman, their heirs and assigns, against every person whomsever lawfully claiming, or to claim the same or any part thereof. (emphasis added)

The question presented is whether Grande reserved one-fourth of the royalty from the entire 86.82 and 0.003 acres or one-fourth of the royalty from the undivided one-half mineral interest Grande owned at the time of the conveyance. Grande argues that the deed reserves one-fourth of the royalty of the entire mineral estate. Averyt argues that the deed reserves one-fourth of the royalty only from the undivided one-half mineral interest Grande owned at the time of the conveyance to the Fogelmans.

■ Because neither party contends that the deed is ambiguous, we construe the language of the deed to ascertain the intent of the parties without considering parol evidence. *Middleton v. Broussard,* 504 S.W.2d 839 (Tex.1974). Courts give legal meaning to the language of the deed by construing all of its provisions in harmony and only if deed provisions irreconcilably conflict, apply one provision to the exclusion of another. *Benge v. Scharbauer,* 152 Tex. 447, 259 S.W.2d 166 (1953).

■ Specific rules of construction apply to cases in which a grantor owns an undivided mineral interest and reserves a fraction of the minerals under the land in the deed. If the deed reserves a fraction of the minerals under the land *conveyed,* then the deed reserves a fraction of the part of the mineral estate actually owned by the grantor and conveyed in the deed. *Hooks v. Neill,* 21 S.W.2d 532 (Tex.Civ. App.—Galveston 1929, writ ref'd). In *Hooks,* the grantor conveyed all of his undivided one-half interest in a tract of land. He then reserved "a one-thirty second part of all oil on and under the said land and premises herein described and conveyed." The *Hooks* court focused on the word "conveyed" to hold that the reservation clause applied "only to the interest which [grantors] have in the land and ore which they conveyed." *Hooks,* 21 S.W.2d at 538.

■ If, on the other hand, the deed reserves a fraction of the minerals under the land *described,* the deed reserves a fraction of the minerals under the entire physical tract, regardless of the part of the mineral estate actually conveyed. *King v. First National Bank of Wichita Falls,* 144 Tex. 583, 192 S.W.2d 260 (1946). In *King,* the grantor conveyed all of his undivided one-half interest in the described land. The deed later reserved "an undivided one eighth of the usual and customary one eighth royalty . . . in oil and gas and other minerals that may be produced from the hereinabove described land." This court focused on the word "described" to hold that the grantor reserved an undivided one eighth of the royalty from the minerals under the entire described tract, not just the grantor's undivided one-half. *King,* 192 S.W.2d at 262. We distinguished *Hooks* on the basis that the deed in that case limited the reservation to part of the estate conveyed while the *King* deed con-

tained no such restricting language. *Id.* See Masterson, *Double Fraction Problems In Instruments Involving Mineral Interests,* 11 Southwestern L.J. 281, 281 (1957) (disapproves distinction but states that *King* better effects intent of parties).

This court applied this same rule to a grant of a fractional mineral interest in *Middleton v. Broussard,* 504 S.W.2d 839 (Tex.1974). In *Middleton,* the grantors' deed conveyed undivided fractional interests in several tracts of land, reserving all of the minerals to the grantor. The deed then granted a one-sixty-fourth royalty interest "in and to all of the oil, gas and other minerals in and under and that may be produced from all of the described land and premises." We relied on the phrase "described land and premises" and *King* to hold that the deed granted a one-sixty-fourth royalty in the entire mineral estate under the land, not just in the fractional interest conveyed. *Middleton,* 504 S.W.2d at 842.

The Grande to Fogelman deed reserves one-fourth of the royalty from minerals "that may be produced from the lands above described." This places the reservation within the *King* rule. Averyt argues, however, that the exception of one-half of the minerals in the "subject to" clause is part of the description of the land. Averyt asserts that the "lands above described," therefore, are the two tracts minus the one-half mineral interest excepted from the grant in the "subject to" clause. Averyt relies on *Bass v. Harper,* 441 S.W.2d 825 (Tex.1969), for his position, arguing that *Bass* controls our decision by holding that the "subject to" clause limits the *description* of the land. In *Bass,* Bass owned the entire surface and eight-fourteenths of the one-eighth royalty in a tract of land. Bass conveyed an undivided one-half interest in the land to Miller. The deed's "subject to" clause excepted from the conveyance various mineral interests totaling six-fourteenths of the royalty. This court held that the granting clause conveyed one-half of the one-eighth royalty because it contained no language limiting the grant to one-half of the interest Bass owned. This

court then held that the grant of seven-fourteenths of the royalty was subject to the exception of six-fourteenths, leaving Miller with one-fourteenth of the royalty. 441 S.W.2d at 827–28. In reaching this decision, the court held that the exception of six-fourteenths of the royalty in the "subject to" clause operated to limit the *estate granted* and did not just protect Bass on his warranty. 441 S.W.2d at 827.

*Bass* is readily distinguishable and does not control our decision. *Bass* only holds that the "subject to" clause limits the estate granted in the land, it does not reach the question here: whether the "subject to" clause forms part of the description of the land.

 We hold that a "subject to" clause which excepts fractional mineral interests from lands and minerals conveyed does not form part of the description of the land. The "subject to" clause does limit the estate granted and warranted. *Bass,* 441 S.W.2d at 827. There is a difference, however, between the estate granted and the land described. "Land" is the physical earth in its natural state, while an estate in land is a legal unit of ownership in the physical land. 1 Thompson, *Thompson on Real Property* § 51 (1939). To define the estate granted is to set out the portion of the physical land conveyed. In contrast, "[T]o describe land is to outline its boundaries so that it may be located on the ground, *and not to define the estate conveyed therein." Sharp v. Fowler,* 151 Tex. 490, 252 S.W.2d 153, 154 (1952).

 Because "land" includes the surface of the earth and everything over and under it, including minerals in place, Thompson at § 51, a description of land includes the land and all the minerals naturally existing underneath. *Holloways Unknown Heirs v. Whatley,* 133 Tex. 608, 131 S.W.2d 89, 92 (Tex.Comm'n App. 1939, opinion adopted). In other words, minerals under "the lands described" refers to all the minerals under the entire land because minerals "would necessarily be produced from the whole land, irrespective of the

ownership of undivided shares thereof." *King*, 192 S.W.2d at 263. The "subject to" clause affects "the ownership of the undivided shares" of the minerals, not the description of the land containing them. *Id.* Thus, when the Grande to Fogelman deed reserved a fraction of the minerals in the "lands above described," it meant the minerals under the entire physical tracts described in the deed by metes and bounds. *Id.* at 262. The dissent correctly notes that here the interest conveyed is the same as the interest described. However, Grande reserved one-fourth of the royalty from the *lands* described, not from the interest described.

The deed further evidences an intent to reserve one-fourth of the royalty from the minerals under the entire land when it reserved "¼th of the royalty covering *all* of the oil, gas and other minerals ... in and under and that may be produced from the lands above described" (emphasis added). *Middleton*, 504 S.W.2d at 843; *King*, 192 S.W.2d at 263. We therefore hold that the Grande to Fogelman deed reserved to Grande an undivided one-fourth of the royalty from the minerals produced from the whole of the tracts described in the deed.

Regardless of the appeal of Averyt's argument that the "subject to" clause is part of the description of the land, its adoption now would disturb the ownership of all minerals granted or reserved in deeds prepared according to the long standing rule here applied. *King* was written in 1946. Since then, numerous cases have relied on the *King* rule to apportion ownership of minerals. *Middleton*, 504 S.W.2d at 843; *Gibson v. Turner*, 156 Tex. 289, 294 S.W.2d 781 (1956); *McElmurray v. McElmurray*, 270 S.W.2d 880 (Tex.Civ.App.—Eastland 1954, writ ref'd); *Miller v. Speed*, 259 S.W.2d 235, 236 (Tex.Civ.App.—Eastland 1952), no writ); *R. Lacy, Inc. v. Jarrett*, 214 S.W.2d 692 (Tex.Civ.App.—Texarkana 1948, writ ref'd). For other states relying on the *King* rule, see *Price v. Atlantic Refining Co.*, 79 N.M. 629, 447 P.2d 509 (1968); *Williams v. Sohio Petroleum Co.*, 18 Ill.App.2d 194, 151 N.E.2d 645 (1958); *Ferguson v. Morgan*, 220 Miss. 266,

70 So.2d 866 (1954); *Pollock v. McAlester Fuel Co.*, 215 Ark. 842, 223 S.W.2d 813 (1949). *Cf. Krauss v. Fry*, 209 La. 250, 24 So.2d 464 (1946) ("land described" held ambiguous, parol evidence considered). Also, virtually all of the commentators set out the *King* rule as governing this type of situation. Hemingway, *Law of Oil and Gas* § 3.2, pp. 113–14 (2nd ed. 1983); 1 Kuntz, *Oil and Gas* § 14.5, p. 331 (1960); 1 Williams and Meyers, *Oil and Gas Law* § 312, p. 600 n. 4 (1970); Barber, *Duhig to Date: Problems in the Conveyancing of Fractional Mineral Interests* 13 Sw. L.J. 321, 323 (1959); Masterson, *Double Fraction Problems in Instruments Involving Mineral Interests* 11 Sw. L.J. 281, 282–83 (1957). Undoubtedly, numerous deeds, in addition to the one in this case, were prepared according to these rules. We should be loathe to change long-standing rules in the oil and gas field when doing so would alter the ownership of minerals conveyed in deeds which rely on the law established by this court and followed by lower courts, commentators, and especially lawyers advising their clients.

■ Averyt also complains that the trial court erred in failing to file findings of fact and conclusions of law. Averyt properly requested findings of fact and conclusions of law, which the trial court did not file. However, the record does not reveal a complaint filed "in writing, within five days after" the findings were due as required by Tex.R.Civ.P. 297. Averyt waived this complaint.

We overrule all of Averyt's points of error. Accordingly, we affirm the judgment of the court of appeals and that of the trial court.

KILGARLIN, J., joined by RAY and WALLACE, JJ., dissents.

KILGARLIN, Justice, dissenting.

I respectfully dissent. How can Grande, Inc. reserve to itself a one-fourth royalty interest in the half of the mineral estate in which it had no interest? The Grande to

Fogleman deed clearly evidences that Texas Osage already owned the other one-half mineral interest.

The court purports to rely on *King v. First National Bank of Wichita Falls*, 144 Tex. 583, 192 S.W.2d 260 (1946), and *Middleton v. Broussard*, 504 S.W.2d 839 (Tex. 1974), yet it ignores the reasoning used in these cases. The court cites *King* for the proposition that the reservation refers only to the land described, not the land conveyed. However, in *King*, this court looked "forward from the granting clause and backward from the reservation clause" to determine the land described. 144 Tex. at 587, 192 S.W.2d at 263. In this case, the intervening paragraphs between these clauses contain the "subject to" clauses; therefore, they are part of the *description*. Accordingly, the "subject to" clauses limit and define the land described to that which Grande owned.

This limitation is also in accord with our decision in *Bass v. Harper*, 441 S.W.2d 825 (Tex.1969), which the court attempts to distinguish. In *Bass*, the deed also contained a "subject to" clause. While the court correctly notes that in *Bass*, the "subject to" clause was held to limit the estate granted, it also limited the description of the estate of the grantor.

The court's reliance on *Middleton* is similarly misguided. While the court appears to be following *Middleton*, the court overlooks an important fact. The grantors in *Middleton* owned all of the surface and mineral estate and conveyed "a lesser undivided surface estate," reserved all of the minerals, and granted a "one sixty-fourth royalty 'in and to said tracts of land'." 504 S.W.2d at 842. Thus, the description of the land necessarily included all that was owned by the grantors. From that description of the land owned by the Broussards, the deed conveyed the lesser included surface estate and the royalty interest in *all* of the land owned by the Broussards.

Here, Grande only owned a one-half mineral interest. Grande could not have possibly reserved a royalty in the one-half mineral interest of Texas Osage. This case is

clearly on point with *Hooks v. Neill*, 21 S.W.2d 532 (Tex.Civ.App.—Galveston 1929, writ ref'd). In *Hooks*, Mrs. Neill conveyed her one-half-undivided interest in a certain tract of land and reserved a "one thirty-second of all oil on and under said land and premises herein described and conveyed." 21 S.W.2d at 538.

The court attempts to distinguish *Hooks* by arguing that the key language in *Hooks* was the word "conveyed" in the reservation clause, while in this case, the reservation referred to the land "described." What the court misses is that both are one and the same. The interest *described* in the Grande deed is the interest *conveyed*. Accordingly, I would reverse the judgment of the court of appeals and hold that the deed reserved a one-fourth royalty from the one-half mineral interest Grande owned at the time of the conveyance.

RAY and WALLACE, JJ., join in this dissent.

KILGARLIN, Judge, dissenting on rehearing.

In order to elaborate on my earlier views, I further respectfully dissent. An unambiguous deed "must be given the legal effect resulting from <u>a construction of the language contained</u> within the four corners of the instrument. All parts of the instrument must be given effect, if possible to do so, without violating any legal principle." *Benge v. Scharbauer*, 152 Tex. 447, 259 S.W.2d 166, 167 (1953) (emphasis added). Therefore, we must determine the parties' intent by construing the language of the deed. *Id.* 259 S.W.2d at 168.

Although the deed is lengthy, analysis of all provisions within "the four corners" is necessary to justly construe this instrument. The Grande-Fogleman deed commenced with the general granting language:

THE STATE OF TEXAS,
COUNTY OF FAYETTE.
 KNOW ALL MEN BY THESE PRESENTS, that Grande, Inc., a Texas Corporation, acting by and through its

Vice-President, Terry Frazee, hereunto authorized by Resolution of the Board of Directors of said Grande, Inc., for the consideration hereinafter stated, paid and to be paid by Gordon V. Fogleman and wife, Clarice E. Fogleman, have GRANT-ED, SOLD and CONVEYED, and by these presents do GRANT, SELL and CONVEY, subject to the Vendor's Lien retained, unto the said Gordon V. Fogleman and wife, Clarice E. Fogleman, of Harris County, Texas, the following described real estate:

Texas adheres to the ownership in place concept, which recognizes that a corporeal estate in realty may be created in the minerals apart from the surface. Therefore, the real estate described in the deed included both the surface estate and the mineral estate.

The deed's description of that which was granted states:

FIRST TRACT:

All that certain tract or parcel of land, situated in Fayette County, Texas, a part of the Franklin Lewis League, A–64, and the John Eblin League, A–42, same being a part of a 128.21 acre tract of land conveyed from Malisia Rivers, et al, to Grande, Inc., in a deed dated August 3, 1977, and recorded in Volume 507, Pages 109–112, Deed Records of Fayette County, Texas, and described by metes and bounds as follows, to-wit:

BEGINNING at an iron pin for the North corner, same being the North corner of the said Grande, Inc. 128.21 acres;

THENCE South 47° 01' East 1856.0 feet to an iron pin for the East corner, same being the East corner of the said Grande, Inc., 128.21 acres;

THENCE South 42° 46¼' West 1415.3 feet to an iron pin for a corner, same being a corner of the said Grande, Inc. 128.21 acres;

THENCE North 47° 18¼' West 782.9 feet to an iron pin for an interior corner, same being an interior corner of the said Grande, Inc. 128.21 acres;

THENCE South 41° 57¾' West 2082.3 feet to an iron pin for the South corner,

same lying in the Southeast boundary of the said Grande, Inc. 128.21 acres;

THENCE North 52° 39¼' West 39.1 feet to an iron pin, North 33° 39¼' East 112.1 feet to an iron pin, North 10° 22¾' East 81.8 feet to an iron pin, North 26° 46½' East 144.7 feet to an iron pin, North 31° 12¼' East 628.1 feet to an iron pin, North 10° 21¾' West 1068.0 feet to an iron pin for the West corner, same being an interior corner of the said Grande, Inc. 128.-21 acres;

THENCE North 43° 18¾' East 1934.1 feet along the Northwest boundary of the said Grande, Inc. 128.21 acres to the place of beginning, containing 86.62 acres of land.

SECOND TRACT:

An undivided ½ interest in and to all that certain tract or parcel of land, situated in Fayette County, Texas, a part of the John Eblin League, A–42, same being a part of a 128.21 acre tract of land conveyed from Malisia Rivers, et al, to Grande, Inc., in a deed dated August 3, 1977, and recorded in Volume 507, Pages 109–112, Deed Records of Fayette County, Texas, and described by metes and bounds as follows, to-wit:

BEGINNING at an iron pin for the South corner, same being the South corner of the said Grande, Inc., 128.21 acres, same lying in the Northeast margin of a County Road;

THENCE North 43° 59' West 34.0 feet along the Northeast margin of the said County Road to an iron pin for the West Corner;

THENCE North 33° 39¼' East 34.8 feet to an iron pin for the North corner;

THENCE South 52° 39¼' East 39.1 feet to an iron pin for the East corner, same lying in the Southeast boundary of the said Grande, Inc. 128.21 acres;

THENCE South 41° 57¾' West 40.0 feet along the Southeast boundary of the said Grande, Inc. 128.21 acres to the place of beginning, containing 0.03 acre of land.

LESS, HOWEVER, AND SUBJECT TO an undivided ½ interest in the oil, gas, sulphur, and all other minerals, described

in that deed from Rubie Keilers and Annie Keilers, to Texas Osage Co-operative Royalty Pool, et al, dated May 2, 1930, and recorded in Volume 152, Pages 75–76, Deed Records of Fayette County, Texas.

LESS, ALSO, AND SUBJECT TO certain rights granted to Fayette Electric Cooperative, Inc., by an instrument in writing from David Rivers, et ux, dated June 7, 1945, and recorded in Volume 217, Page 271, Deed Records of Fayette County, Texas.

This description was followed by a reservation clause excepting one-fourth of the minerals from the lands above described:

There is hereby excepted from this conveyance and reserved to Grantor, its successors and assigns, an undivided ¼th of the royalty covering all of the oil, gas and other minerals, including but not limited to uranium, coal, lignite, iron, gold, silver, and all other minerals, whether or not now known to be valuable and whether by drilling, strip mining, or any other method, in, to and under or that may be produced from the lands above described to be paid or delivered unto the Grantor, its successors and assigns, free of cost to it from royalty oil, gas, and other minerals, as above defined, forever. Said interest hereby reserved is a non-participating royalty interest and shall not participate in the bonuses paid for any oil, gas and other minerals lease, as above defined, covering said lands, nor shall it participate in the money rentals which may be paid to extend the time within which a well may be begun under the terms of any lease covering said lands. It shall not be necessary for the Grantor, its successors or assigns, to join in the execution of any lease covering said royalty interest herein reserved and the said Grantees, their heirs or assigns, shall have the right to lease said lands for oil, gas and other minerals, as above defined, provided, however, that all such leases shall provide for a royalty of not less than ⅛th.

Because the reservation clause excepts one-fourth of the minerals from the lands described rather than one-fourth of the minerals from the lands conveyed, we are called upon to determine what constitutes the "above described lands." We were confronted with this question in *King v. First National Bank of Wichita Falls*, 144 Tex. 583, 192 S.W.2d 260 (1946). In *King*, the pertinent portions of the deed were as follows:

That J.E. Duncan, a single man, having never been married, of the County of Young, State of Texas, for and in consideration of the sum of Ten and No/100 Dollars, and other good and valuable consideration, all cash to me in hand paid by B.W. King, the receipt of which is hereby acknowledged, have Granted, Sold and Conveyed, and by these presents do Grant, Sell and Convey unto the said B.W. King, of the County of Young, State of Texas, all that certain undivided one-half (½) interest (being all of the interest owned by the grantor) in and to the following described land situated in Young County, Texas, to-wit:

1st Tract—West one-half of T.E. & L. Company Survey No. 461, Abstract No. 668, containing 160 acres more or less.

2nd Tract—Southeast one-fourth of T.E. & L. Company Survey No. 460, Abstract No. 667, containing 80 acres, more or less.

The Grantor hereby reserves unto himself, his heirs, successors and assigns for a period of ten (10) years only from this date an undivided one-eighth (⅛) of the usual and customary one-eighth royalty interest reserved by the land-owner in oil and gas and othe minerals that may be produced from the hereinabove described land;

192 S.W.2d at 261 (emphasis added). To determine what constituted the "hereinabove described land," this court looked "forward from the granting clause and backward from the reservation clause," finding it "evident that the terms 'following described land,' 'hereinabove described land,' 'said land,' and 'premises' ... relate

to the intervening paragraphs of the deed." *Id.* at 263 (emphasis added).

There is logic in the *King* court's conclusion. The granting clause concludes with the words "the following described land, ... to-wit:." The reservation clause applies to the "above described land." The provisions which appeared between the granting clause and the reservation clause were therefore meant to constitute the description.

In the case at bar, the court has rejected this theory by holding that one of the provisions appearing between the granting clause and the reservation clause in the Grande-Fogleman deed is not part of the land description. This particular portion is:

Less, however, and subject to an undivided one-half interest in the oil, gas, sulphur and other minerals, described in that deed from Rubie Keilers and Annie Keilers, to Texas Osage Co-operative Royalty Pool, et al, dated May 2, 1930, and recorded in Volume 152, pages 75 and 76, Deed Records of Fayette County, Texas.

In reaching its decision, the court has failed to clearly construe the meanings of the terms "land" and "described" as viewed in the context of a deed.

"Land" is a term which on its face includes both the surface and the minerals in and under the land. The broad scope of the meaning of the word "land" is well illustrated by our decision in *Holloway's Unknown Heirs v. Whatley*, 133 Tex. 608, 131 S.W.2d 89 (1939). In *Holloway,* this court held a mineral estate, when constructively severed from the surface, is still "land." *See Sharp v. Fowler*, 151 Tex. 490, 252 S.W.2d 153, 154 (1952), and *Holloway,* 131 S.W.2d at 92.

The term "description" refers to:

[T]he subject matter of a deed, including all reservations and exceptions contained therein. The term can also be applied to the language defining the size of the interest conveyed. Thus, the 'description' determines the scope of the notice given by the deed to, and the scope of the proper reliance on the deed by, bona fide purchasers of land. A description must be sufficiently full and definite to afford some <u>means of identification</u> of the property or refer to something extrinsic by which the land may be <u>identified with certainty</u>. These criteria are usually applied with liberality.

6A, *Powell on Real Property* § 887[1] (emphasis added). "Descriptions are commonly phrased in terms of monuments, maps and lot numbers, stated occupancies, metes and bounds, or *quantity,"* *id.* at 887[3]; *see Canter v. Lindsey*, 575 S.W.2d 331 (Tex.Civ.App.—El Paso 1978, writ ref'd n.r. e.); and the description part of a deed has been described by this court as "an identifying reference to the interest in land which was the subject of the conveyance." *Rutherford v. Randal*, 593 S.W.2d 949 (Tex.1980).

A severed mineral estate is land. Land is subject to a description, as a means of identification. In order to identify a mineral interest, it is necessary to give a description of the surface under which it is located and the quantity of the minerals below.

In the Grande-Fogleman deed, the description began with the leagues, quantity, and metes and bounds of the land, which on its face included the surface of the earth and everything over and under it, including minerals in place. *Thompson on Real Property* at § 1531 (1934). This description was immediately followed by language limiting the mineral description to one-half of the surface "less an undivided one-half *described* in" a prior deed. Only when we include this limiting language is, as Professor Powell stated, the description "sufficiently full and definite to afford [a] means of identification of the property," property which consisted of all the surface and one-half of the minerals.

In *Middleton v. Broussard*, 504 S.W.2d 839 (Tex.1974), the Broussards owned all of the surface estate and the mineral estate. The granting clause and the questioned descriptions in their deed to Middleton were as follows:

## The Broussard-Middleton Deed

... have GRANTED, SOLD and CONVEYED, and by these presents do GRANT, SELL and CONVEY unto the said R.M. Middleton, of the County of Chambers, State of Texas, (subject, however, to the exception and reservation of all the oil, gas and other minerals, also a certain right-of-way deed for a ditch, as hereinafter specifically indicated) all those certain tracts or parcels of land situated in Chambers County, Texas, about seven or eight miles southeast of the town of Anahuac, and also a one-sixty-fourth (1/64) royalty right and interest in and to said tracts of land, and both the said tracts of land and the said one-sixty-fourth (1/64) royalty right and interest therein, being particularly described as follows: FIRST: An undivided twenty-two-thirty-seconds (22/32) interest (795.5 acres) in and to 1157 acres of the R.E. Booth League, which was patented to R.E. Booth by Patent No. 368, Volume 7, dated April 24th, 1848, [then follows a description of the 1157 acres by deed and record references].

SECOND: An undivided three-fourths (3/4) interest (99.4 acres) in and to that certain tract of land containing 132.6 acres, and known as Survey No. 178, which was patented to Erastus Moss by Patent No. 177,. Volume 9, dated December 12th, 1883, and of record in Vol. D, page 255, of said deed records.

THIRD: An undivided three-fourths (3/4) interest (480 acres) in and to Survey No. 74, containing 640 acres, patented to H & TC Ry. Co. by Patent No. 421, [then follows a description by deed and record references].

FOURTH: An undivided three-fourths (3/4) interest (480 acres) in and to Survey No. 76, containing 640 acres, patented to H & TC Ry. Co. by Patent No. 423, [then follows a description by deed and record references].

FIFTH: An undivided three-fourths (3/4) interest (480 acres) in and to Survey No. 80, containing 640 acres, patented to H & TC Ry. Co. by Patent No. 418, [then follows a description by deed and record references].

SIXTH: An undivided three-fourths (3/4) interest (615.2 acres) in and to Survey No. 82, containing 820.3 acres, patented to E. Moss by Patent No. 419, [then follows a description by deed and record references].

SEVENTH: An undivided three-fourths (3/4) interest (692.5 acres) in and to that certain 923 acres of Survey No. 180, containing 1023 acres, patented to John B. Murray by Patent No. 72, [then follows a description by deed and record references].

EIGHTH: All of that certain 100 acre tract of land, a part of the said J.B. Murray survey No. 180, and being the same 100 acre tract which was conveyed by E. Moss to J.T. Moss by deed dated June 14th, 1897, and of record in Vol. I, page 515, of said deed records.

NINTH: An undivided one-sixty-fourth (1/64) royalty interest in and to all of the oil, gas and other minerals in and under and that may be produced and saved from all of the above described land and premises, and the said one-sixty-fourth (1/64) royalty interest to be delivered free of expense to the grantee herein, his heirs or assigns, on the land at the well or wells producing the same into the tanks or pipe lines in the usual manner to the credit of the grantee, his heirs or assigns.

The Broussards began with the severance of the mineral estate from the surface estate in the tracts of land by reserving to themselves all of the mineral estate. They then granted the Middletons a one-sixty-fourth royalty in the minerals on the tracts of land. A description of the tracts followed. Confusion was created in *Broussard* because the language sets out a description of the surface of each tract for identification purposes and carves out undivided fractional surface interests in each tract. The conveyance of *surface* interests

was *out of the described tracts*, and the conveyance of a *royalty* interest was *out of the described tracts*. This court therefore concluded that the grantors intended that the one-sixty-fourth royalty in the lands described referred to the tracts which were described in entirety.

In the Grande-Fogleman deed, a description by metes and bounds was given of the land. Standing alone, this description covered both the surface and the minerals. Since Grande did not own all the minerals, the description was modified by subtracting the one-half previously severed mineral interest ("land" under *Holloway* ) from the description.

The intent of the parties to have the above-described land refer to all of the surface and one-half the minerals is further evidenced by language appearing at the conclusion of the Grande-Fogleman deed:

> But it is expressly agreed that the Vendor's Lien is hereby retained against the above described premises and improvements until the indebtedness above mentioned, as evidenced by said promissory note, both principal and interest is fully paid, it being understood that when said note is paid in full this deed shall thereupon become absolute.

If we are to accept the argument proffered by the court, theoretically Grande retained and the Foglemans gave a vendor's lien on the half mineral interest which neither one of them ever owned. Certainly this was neither of the parties' intention.

To determine the intent of these parties, we should construe the language contained within the four corners of the Grande-Fogleman deed. We can give effect to all parts of the instrument without violating any legal principles by holding that the provision in question was meant to be part of the description of the land in this deed. My regret is that my brethren have chosen not to do so.

RAY, J., joins in this dissent.