

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-15-00617-CV

Toni **COMBEST** and Mountain Laurel Minerals, LLC,
Appellants

v.

**MUSTANG MINERALS, LLC**,
Appellee

From the 218th Judicial District Court, La Salle County, Texas
Trial Court No. 14-08-00144-CVL
Honorable Donna S. Rayes, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:       Sandee Bryan Marion, Chief Justice
               Karen Angelini, Justice
               Patricia O. Alvarez, Justice

Delivered and Filed:  August 3, 2016

AFFIRMED IN PART; DISMISSED IN PART

This appeal arises from a trespass to try title action filed by Mountain Laurel Minerals LLC ("Mountain Laurel") against Mustang Minerals LLC ("Mustang"). Toni Combest, whose mineral rights derive from the same deed as Mountain Laurel, intervened in the action. All parties filed motions for summary judgment, urging their respective interpretations of the deed. After considering the motions, the trial court granted Mustang's motion for summary judgment and ordered that Toni Combest and Mountain Laurel take nothing against Mustang. Toni Combest and Mountain Laurel then filed a joint notice of appeal. However, only Toni Combest filed an

appellant's brief on the merits. At oral argument, the attorney who signed the joint notice of appeal stated that only Toni Combest was appealing the trial court's judgment and that Mountain Laurel was not pursuing its appeal. Therefore, we dismiss Mountain Laurel's appeal.

In her appellant's brief, Toni Combest argues that as a matter of law, the trial court did not correctly interpret the deed. Alternatively, Combest argues that the deed is ambiguous and its interpretation is a fact matter that should be decided by a jury. Finally, Combest argues that because Mustang is a foreign entity doing business in Texas, but has refused to register with the Texas Secretary of State, Mustang is precluded from receiving a take-nothing judgment in its favor. We affirm the judgment against Toni Combest.

## BACKGROUND

At issue in this appeal is whether the deed in question conveyed mineral rights to Toni Combest, who in turn conveyed half of her rights to Mountain Laurel. Toni Combest's mineral rights arose from three "source" deeds. The first deed, dated November 28, 1967, conveyed the following to Horace and Inga Combest:

> Tract Nine (9), Section Sixty Two (62), GARDENDALE COLONY LANDS, according to map or plat recorded in Vol. "U", Page 135, Deed Records of La Salle County, Texas, and containing twenty (20) acres of land.
>
> SUBJECT TO: A strip ten feet wide where tract touches section and/or half-section lines reserved for road purposes.
>
> There is excepted from the property herein conveyed and the warranty herein given, and reserved to the Grantor herein, her heirs and assigns, one-half of all oil, gas, and other minerals of whatsoever character (the naming of oil and gas shall in no way limit the term "minerals") in and under the premises hereinabove described.
>
> This conveyance is made subject to the following matters to the extent same are in effect at this time: Any and all restrictions, covenants, conditions and easements, if any, relating to the hereinabove described property, but, only to the extent they are still in effect and shown of record in the hereinabove mentioned County and State.

The second "source" deed, also dated November 28, 1967, conveyed the following to Horace and Inga Combest:

Tract Numbered Ten (10), Section numbered Sixty-Two (62), GARDENDALE COLONY LANDS, LaSalle County, Texas, according to plat recorded in Vol. "U", page 135, Deed Records, LaSalle County, Texas, and containing twenty (20) acres of land.

Subject to a strip ten (10) feet wide, where tract touches Section and/or Half-Section lines, reserved for road purposes.

There is excepted from the property herein conveyed and the warranty herein given and reserved to grantors herein, their heirs and assigns, one-half (1/2) of all of the oil, gas and other minerals of whatsoever character, the naming of oil and gas shall in no way limit the term minerals, in and under the premises hereinabove described.

This conveyance is made subject to the following matters, to the extent same are in effect at this time: Any and all restrictions, covenants, conditions and easements relating to the above described property, but only to the extent they are still in effect, shown of record in above mentioned County and State, and to all zoning laws, regulations and ordinances of municipal and/or other governmental authorities, if any, but only to the extent they are still in effect, relating to the above described property.

The third "source" deed, dated November 21, 1968, conveyed the following to Horace and Inga Combest:

Tracts No. Twenty Three (23) and Twenty Four (24), Section Sixty Two (62), GARDENDALE COLONY LANDS, La Salle County, Texas, according to plat recorded in Vol. U., Page 135, La Salle County Deed Records.

This conveyance is made subject to the following matters, to the extent same are in effect at this time: Any and all restrictions, covenants, conditions and easements, if any, relating to the hereinabove described property, but only to the extent they are still in effect and shown of record in the hereinabove mentioned County and State.

There is excepted from the property herein conveyed and the warranty herein given and reserved to Grantor herein, her heirs, successors and assigns, one-half of all of the oil, gas and other minerals of whatsoever character (the naming of oil and gas shall in no way limit the term "minerals") in and under the premises hereinabove described.

Pursuant to these three source deeds, Horace and Inga Combest owned an undivided one-half interest in all of the oil, gas, and minerals under the thirty acres at issue in this appeal. Thus,

at the time of the Combest Deed described below, they owned an undivided one-half interest in the mineral estate.

The deed at issue in this appeal is the "Combest" Deed. The Combest Deed, dated September 18, 2003, conveyed the following from Inga and Horace Combest to Preston and Toni Combest:

> **Property (including any improvements):** Property situated in LaSalle County, Texas, being in the ABST 959 SUR 62 J T Beauregard Survey, Tracts 9, 10, 23 & 24, AB Blk:0959, Lot 0062, 80 (eighty) acres of land.
>
> The grantor herein, Horace Combest, and Inga Combest excepts from this conveyance and reserves unto themselves, their heirs and assigns an undivided one-half (1/2) interest in and to all of the oil, gas, and/or other minerals.
>
> **Reservations from and Exceptions to Conveyance and Warranty:**
> 1. Any and all easements for utilities or rights-of-way, whether public or apparent.
>
> 2. Any easements, rights-of-way, prescriptive rights, whether of public record or not; all presently recorded restrictions, reservations, covenants, conditions, oil and gas leases, mineral severances, and other instruments, and other liens and conveyances that affect the property; rights of adjoining owners in any walls and fences situated on a common boundary; and discrepancies, conflicts, or shortages in area or boundary lines; any encroachments or overlapping of improvements.
>
> 3. Title to oil, gas, and other minerals on and under the property, together with all rights of ingress and egress, heretofore transferred or reserved by predecessors.
>
> Grantor, for the consideration and subject to the reservation from and exceptions to conveyance and warranty, grants, sells, and conveys to Grantee the property, together with all and singular the rights and appurtenances thereto in any wise belonging, to have and hold unto Grantee, Grantee's heirs, executors, administrators, successors, or assigns forever. Grantor hereby binds Grantor and Grantor's heirs, executors, administrators, and successors to warrant and forever defend all and singular the property to Grantee and heirs, executors, administrators, successors, and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof, except as to the reservations from and exceptions to warranty.

On March 22, 2012, Chesapeake Exploration, LLC, as lessee, executed an oil and gas lease with Toni Combest, as lessor.[1] That same date, Chesapeake, as lessee, also executed an oil and gas lease with David Combest, as lessor. On November 14, 2012, David Combest, the sole heir of Horace and Inga Combest, conveyed all of his interest in and to the mineral estate to US Mineral Resources, LLC. On November 20, 2012, US Mineral conveyed all of its interest in the mineral estate to Appellee Mustang. On September 5, 2013, Toni Combest conveyed one-half of her interest in and to the mineral estate to Mountain Laurel.

Chesapeake then pooled the leases by Toni Combest and David Combest into a unit and proceeded to commence drilling operations on the unit. After being successful in its drilling, Chesapeake paid Toni Combest and Mountain Laurel royalty payments for their combined undivided one-half interest in the mineral estate. After three months of payments, however, Chesapeake stopped making payments because Mustang complained and successfully argued to Chesapeake that it owned all of the mineral estate, including the undivided one-half interest claimed by Toni Combest and Mountain Laurel.

In response, Mountain Laurel filed a trespass to try title suit against Mustang, which Toni Combest joined as intervenor. Mountain Laurel alleged that Toni and Preston Combest under the Combest Deed had received either all of the mineral estate or one-half of the mineral estate. Mustang filed a general denial. All of the parties claimed their interest in the mineral estate arose under the Combest Deed and argued in competing motions for summary judgment that the language of the deed supported their respective interpretations.

Mountain Laurel's motion for summary judgment, which was joined by Toni Combest, argued that the Combest Deed conveyed the mineral estate owned by Horace and Inga Combest to

---

[1] Because Toni Combest's husband, Preston, had passed away, Chesapeake's lease was only with Toni Combest.

Toni and Preston Combest. In the alternative, Mountain Laurel's motion argued that if the trial court did not agree with this interpretation of the deed, then the deed was ambiguous on its face. Finally, Mountain Laurel argued that because Mustang, a Delaware limited liability company, had failed to register in the State of Texas (even though it was doing business in Texas), the court should strike Mustang's motion for summary judgment.

In its motion for summary judgment against Mountain Laurel, Mustang argued that the Combest Deed conveyed only the surface estate to Toni and Preston Combest. According to Mustang, nothing on the face of the deed indicated an express intent to convey minerals. Mustang argued that when the grantors in the deed reserved "unto themselves" an undivided one-half (1/2) interest in and to all the property's mineral estate, they conveyed only the surface estate. In other words, they did not convey an undivided one-half (1/2) interest out of what they owned. Mustang requested the trial court find that it was the owner of the mineral interest and that Mountain Laurel owned no interest in the minerals.

The trial court originally granted the motion for summary judgment filed by Mountain Laurel and joined by Toni Combest. Mustang then filed a motion to reconsider, and the trial court reversed its previous ruling, signing an order denying the motion filed by Mountain Laurel and joined by Toni Combest. The trial court found that as a matter of law neither Mountain Laurel nor Toni Combest could prevail on any of their claims against Mustang. The trial court granted Mustang's motion for summary judgment against Mountain Laurel and ordered that Mountain Laurel take nothing against Mustang. Mustang then filed another motion for summary judgment against Toni Combest based on the same interpretation of the Combest Deed. An additional hearing was then held on a motion to reconsider filed by Mountain Laurel and Toni Combest, and on Mustang's motion for summary judgment. The trial court denied the motion for reconsideration

filed by Mountain Laurel and Toni Combest. It also granted the motion for summary judgment filed by Mustang and entered a take-nothing judgment against Toni Combest.

Mountain Laurel and Toni Combest filed a joint notice of appeal; however, only Toni Combest filed an appellant's brief. As explained above, at oral argument, the attorney who filed the joint notice of appeal explained that Mountain Laurel did not wish to proceed with its appeal. *See* Tex. R. App. P. 6.1(a). Thus, Mountain Laurel's appeal is dismissed, and we will address only the arguments brought by Toni Combest in her brief.

## STANDARD OF REVIEW

We review a summary judgment *de novo*. *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). We must therefore consider all the evidence in the light most favorable to the respondent, indulging all reasonable inferences in favor of the respondent, and determine whether the movant proved that there were no genuine issues of material fact and that it was entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). When competing motions for summary judgment are filed, and one is granted and the other denied, we must review all issues presented and render the judgment the trial court should have rendered. *Comm'rs Court v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997). Finally, when a deed is unambiguous, then its construction is a question of law for the court. *Luckel v. White*, 819 S.W.2d 459, 461 (Tex. 1991). An ambiguous deed, however, presents a question of fact, and summary judgment in such a context is inappropriate. *See Gore Oil Co. v. Roosth*, 158 S.W.3d 596, 599 (Tex. App.—Eastland 2005, no pet.) (explaining that if a written instrument remains reasonably susceptible to more than one meaning after the established rules of interpretation have been applied, then the instrument is ambiguous and extrinsic evidence is admissible to determine the true meaning of the instrument).

**THE COMBEST DEED**

Our primary duty when construing a deed is to ascertain the intent of the parties from all of the language in the deed by considering its "four corners." *Luckel*, 819 S.W.2d at 461. Thus, we "harmonize all parts of the deed," understanding that the "parties to an instrument intend every clause to have some effect and in some measure to evidence their agreement." *Id.* at 462 (quotation omitted). "Even if different parts of the deed appear contradictory or inconsistent," we must "strive to harmonize all of the parts, construing the instrument to give effect to all of its provisions." *Id.* Thus, the labels given clauses, such as "granting," "warranty," habendum," and "future lease," do not control; instead, we must "give effect to the substance of unambiguous provisions." *Id.* at 463. We therefore determine the parties' intent from the whole document, not by the presence or absence of a certain provision. *Concord Oil Co. v. Pennzoil Exploration & Prod. Co.*, 966 S.W.2d 451, 457 (Tex. 1998).

A "deed will pass whatever interest the grantor has in the land, unless it contains language showing the intention to grant a lesser estate." *Hunsaker v. Brown Distrib. Co.*, 373 S.W.3d 153, 157 (Tex. App.—San Antonio 2012, pet. denied) (quoting *Eastin v. Dial*, 288 S.W.3d 491, 500 (Tex. App.—San Antonio 2009, pet. denied)). Thus, a "warranty deed will pass all of the estate owned by the grantor at the time of the conveyance unless there are reservations or exceptions [that] reduce the estate conveyed." *Graham v. Prochaska*, 429 S.W.3d 650, 655 (Tex. App.—San Antonio 2013, pet. denied) (quoting *Cockrell v. Tex. Gulf Sulphur Co.*, 157 Tex. 10, 299 S.W.2d 672, 675 (1956)). "Property 'excepted' or 'reserved' under a deed is 'never included in the grant' and is 'something to be deducted from the thing granted, narrowing and limiting what would otherwise pass by the general words of the grant.'" *Id.* (quoting *King v. First Nat'l Bank of Wichita Falls*, 144 Tex. 583, 192 S.W.2d 260, 262 (1946)). Therefore, "[r]eservations must be made by 'clear language,' and courts do not favor reservations by implication." *Id.* (citations omitted).

"Exceptions must identify, with reasonable certainty, the property to be excepted from the larger conveyance." *Id.* at 655-56 (citations omitted). Thus, "[a]s a general rule, exceptions are strictly construed against the grantor." *State v. Dunn*, 574 S.W.2d 821, 824 (Tex. Civ. App.—Amarillo 1978, writ ref'd n.r.e.). And, a court will construe a deed to confer upon the grantee the greatest estate that the terms of the instrument allow. *Johnson v. Conner*, 260 S.W.3d 575, 579 (Tex. App.—Tyler 2008, no pet.).

At issue in this appeal is the interpretation of the Combest Deed. At the time of this deed, the grantors, Inga and Horace Combest, owned an undivided one-half interest in the oil, gas, and mineral estate. Toni Combest argues that through the Combest Deed, Inga and Horace Combest conveyed one-half of their oil, gas, and mineral rights to her. She emphasizes the language "from this conveyance" and argues that because one cannot convey what one does not own, she necessarily received an undivided one-half of the interest owned by the grantors. On the other hand, Mustang (successor of Inga and Horace Combest) argues that the Combest Deed conveyed only the surface estate to Toni Combest and that Inga and Horace "reserved unto themselves" the undivided one-half interest in the mineral estate they owned at the time of the deed.

### *AVERYT V. GRANDE, INC.*

Both parties point to *Averyt v. Grande, Inc.*, 717 S.W.2d 891 (Tex. 1986), as the controlling case in this appeal. In *Averyt*, the Texas Supreme Court explained that "[s]pecific rules of construction apply to cases in which a grantor owns an undivided mineral interest and reserves a fraction of the minerals under the land in the deed." *Id.* at 893. According to the court, "[i]f the deed reserves a fraction of the minerals under the land *conveyed*, then the deed reserves a fraction of the part of the mineral estate actually owned by the grantor and conveyed in the deed." *Id.* (emphasis in original). The court cited in approval *Hooks v. Neill*, 21 S.W.2d 532 (Tex. Civ. App.—Galveston 1929, writ ref'd), where the grantor conveyed all of his undivided one-half

interest in a tract of land and then reserved "a one-thirty second part of all oil on and under the said land and premises herein described and conveyed." *Averyt*, 717 S.W.2d at 893 (quoting *Hooks*). The supreme court noted that the *Hooks* court "focused on the word 'conveyed' to hold that the reservation clause applied 'only to the interest which [grantors] have in the land and ore which they conveyed." *Id.* (quoting *Hooks*) (alteration in original).

The supreme court explained that "[i]f, on the other hand, the deed reserves a fraction of the minerals under the land *described*, the deed reserves a fraction of the minerals under the entire physical tract, regardless of the part of the mineral estate actually conveyed." *Id.* (emphasis in original). The supreme court cited *King v. First National Bank of Wichita Falls*, 144 Tex. 583, 192 S.W.2d 260 (1946), as an example of this principle. "In *King*, the grantor conveyed all of his undivided one-half interest in the described land." *Averyt*, 717 S.W.2d at 893. "The deed later reserved 'an undivided one eighth of the usual and customary one eighth royalty . . . in oil and gas and other minerals that may be produced from the hereinabove described land." *Id.* (alteration in original). The supreme court explained that the *King* court "focused on the word 'described' to hold that the grantor reserved an undivided one eighth of the royalty from the minerals under the entire described tract, not just the grantor's undivided one-half." *Averyt*, 717 S.W.2d at 893. The *King* court distinguished *Hooks* "on the basis that the deed in that case limited the reservation to part of the estate conveyed while the *King* deed contained no such restricting language." *Averyt*, 717 S.W.2d at 893-94.

The supreme court noted that it had applied "this same rule to a grant of a fractional mineral interest in *Middleton v. Broussard*, 504 S.W.2d 839 (Tex. 1974)." *Averyt*, 717 S.W.2d at 894. The *Middleton* deed "conveyed undivided fractional interests in several tracts of land, reserving all of the minerals to the grantor." *Averyt*, 717 S.W.2d at 894. "The deed then granted a one-sixty-fourth royalty interest 'in and to all of the oil, gas and other minerals in and under and that may be

- 10 -

produced from all of the described land and premises.'" *Id.* The *Middleton* court "relied on the phrase 'described land and premises' and *King* to hold that the deed granted a one-sixty-fourth royalty in the entire mineral estate under the land, not just the fractional interest conveyed." *Averyt*, 717 S.W.2d at 894.

> The supreme court in *Averyt* then considered the deed at issue in its case:
>
> [T]hat Grande, Inc. . . . have GRANTED, SOLD and CONVEYED, . . . unto the said Gordon V. Fogelman and wife, Clarice E. Fogelman, . . . the following described real estate:
>
> FIRST TRACT:
>
> All that certain tract or parcel of land, situated in Fayette County, Texas, . . .
>
> . . .
>
> [C]ontaining 86.82 acres of land.
>
> SECOND TRACT:
> An undivided ½ interest in and to all that certain tract or parcel of land, situated in Fayette County, Texas, . . .
>
> . . .
>
> [C]ontaining 0.03 acres of land.
>
> LESS, HOWEVER, AND SUBJECT TO *an undivided ½ interest in the oil, gas, Sulphur, and all other minerals,* described in that deed from Rubie Keilers and Annie Keilers, to Texas Osage Cooperative Royalty Pool, et al, dated May 2, 1930, and recorded in Volume 152, Pages 75-76, Deed Records of Fayette County, Texas.
>
> . . .
>
> *There is hereby excepted from this conveyance and reserved to Grantor, its successors and assigns, an undivided 1/4th of the royalty covering all of the oil, gas and other minerals*, including but not limited to uranium, coal, lignite, iron, gold, silver, and all other minerals, whether or not now known to be valuable and whether by drilling, strip mining, or any other method, *in, to and under or that may be produced from the lands above described . . . .*

*Averyt*, 717 S.W.2d at 892-93 (emphasis and alterations in original).

The supreme court noted that the deed "reserves one-fourth of the royalty from minerals 'that may be produced from the lands above described.'" *Averyt*, 717 S.W.2d at 894. The supreme court explained that this language "places the reservation within the *King* rule." *Averyt*, 717 S.W.2d at 894. The appellant argued to the court that "the exception of one-half of the minerals in the 'subject to' clause is part of the description of the land." *Id.* In support of his argument, the appellant relied on the court's previous opinion in *Bass v. Harper*, 441 S.W.2d 825 (Tex. 1969). In *Bass*, the grantor owned the entire surface and eight-fourteenths of the one-eighth royalty in a tract of land. The grantor conveyed an undivided one-half interest in the land to the grantee. "The deed's 'subject to' clause excepted from the conveyance various mineral interests totaling six-fourteenths of the royalty." *Averyt*, 717 S.W.2d at 894 (discussing *Bass*). The supreme court explained that in *Bass*, it had "held the granting clause conveyed one-half of the one-eighth royalty because it contained no language limiting the grant to one-half of the interest Bass owned." *Id.* "This court then held that the grant of seven-fourteenths of the royalty was subject to the exception of six-fourteenths, leavening [the grantee] with one-fourteenth of the royalty." *Id.* The supreme court noted that "'[i]n reaching this decision, [it] held that the exception of six-fourteenths of the royalty in the 'subject to' clause operated to limit the *estate granted* and did not just protect [grantor] on his warranty." *Id.* (emphasis in original).

The supreme court distinguished the deed in *Bass* from the one presented in *Averyt*:

*Bass* is readily distinguishable and does not control our decision. *Bass* only holds that the "subject to" clause limits the estate granted in the land, it does not reach the question here: whether the "subject to" clause forms part of the description of the land.

We hold that a "subject to" clause which excepts fractional mineral interests from lands and minerals conveyed does not form part of the description of the land. The "subject to" clause does limit the estate granted and warranted. There is a difference, however, between the estate granted and the land described. "Land is the physical earth in its natural state, while an estate in land is a legal unit of ownership in the physical land. To define the estate granted is to set out the portion

- 12 -

of the physical land conveyed. In contrast, to describe land is to outline its boundaries so that it may be located on the ground, and *not to define the estate conveyed therein*.

Because "land" includes the surface of the earth and everything over and under it, including minerals in place, a description of land includes the land and all the minerals naturally existing underneath. In other words, minerals under "the lands described" refers to all the minerals under the entire land because minerals would necessarily be produced from the whole land, irrespective of the ownership of undivided shares thereof. The "subject to" clause affects the ownership of the undivided shares of the minerals, not the description of the land containing them. Thus, when the [grantor in the] deed reserved a fraction of the minerals in the "lands above described," it meant the minerals under the entire physical tracts described in the deed by metes and bounds. The dissent correctly notes that here the interest conveyed is the same as the interest described. However, [the grantor] reserved one-fourth of the royalty from the *lands* described, not from the interest described.

The deed further evidences an intent to reserve one-fourth of the royalty from the minerals under the entire land when it reserved "1/4th of the royalty covering *all* of the oil, gas, and other minerals . . . in and under and that may be produced from the lands above described." We therefore hold that the [] deed reserved to [the grantor] an undivided one-fourth of the royalty from the minerals produced from the whole of the tracts described in the deed.

*Averyt*, 717 S.W.2d at 894-95 (quotations and citations omitted).

Toni Combest and Mustang vehemently disagree with respect to how *Averyt* applies to the Combest Deed. Toni Combest emphasizes the word "conveyance" in the deed's phrase "excepts from this conveyance" and argues that under *Averyt*, the Combest Deed is more like the principle explained by the supreme court with regard to *Hooks*: "If the deed reserves a fraction of the minerals under the land *conveyed*, then the deed reserves a fraction of the part of the mineral estate actually owned by the grantor and conveyed in the deed." *Averyt*, 717 S.W.2d at 893 (emphasis in original). Mustang, in contrast, argues that the Combest Deed is more like the *King* rule as described in *Averyt*: "If, on the other hand, the deed reserves a fraction of the minerals under the land *described*, the deed reserves a fraction of the minerals under the entire physical tract, regardless of the part of the mineral estate actually conveyed." *Averyt*, 717 S.W.2d at 893

- 13 -

(emphasis in original). We agree with Mustang's interpretation and conclude that the Combest

Deed is more like the *King* rule:

**Property (including any improvements):** Property situated in LaSalle County, Texas, being in the ABST 959 SUR 62 J T Beauregard Survey, Tracts 9, 10, 23 & 24, AB Blk:0959, Lot 0062, 80 (eighty) acres of land.

The grantor herein, Horace Combest, and Inga Combest excepts from this conveyance and reserves unto themselves, their heirs and assigns an undivided one-half (1/2) interest in and to all of the oil, gas, and/or other minerals.

> **"The property"** (i.e. the land described) = 80 acres of land **minus** an undivided ½ interest in and to all of the oil, gas, and minerals (i.e. the ½ mineral interest owned by Inga and Horace Combest)

**Reservations from and Exceptions to Conveyance and Warranty:** . . .

1. Any and all easements for utilities or rights-of-way, whether public or apparent.

2. Any easements, rights-of-way, prescriptive rights, whether of public record or not; all presently recorded restrictions, reservations, covenants, conditions, oil and gas leases, mineral severances, and other instruments, and other liens and conveyances that affect the property; rights of adjoining owners in any walls and fences situated on a common boundary; and discrepancies, conflicts, or shortages in area or boundary lines; any encroachments or overlapping of improvements.

3. Title to oil, gas, and other minerals on and under the property, together with all rights of ingress and egress, heretofore *transferred or reserved by predecessors*.

> Reservation of the other ½ mineral interest not owned by Inga and Horace, and which had already been transferred or reserved in previous deeds

Grantor, for the consideration and subject to the reservation from and exceptions to conveyance and warranty, *grants, sells, and conveys to Grantee the property*, together with all and singular the rights and appurtenances thereto in any wise belonging, to have and hold unto Grantee, Grantee's heirs, executors, administrators, successors, or assigns forever.

> Granting Clause (i.e. the land conveyed): Grantor subject to reservations and exceptions grants, sell, and conveys "**the property**."

> Grantor hereby binds Grantor and Grantor's heirs, executors, administrators, and successors to warrant and forever defend all and singular the property to Grantee and heirs, executors, administrators, successors, and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof, except as to the reservations from and exceptions to warranty.

In looking at the whole deed, we conclude that the Combest Deed reserves a fraction of the minerals *from the land described*. Thus, Inga and Horace Combest did not convey their interest in the mineral estate to Toni and Preston Combest. *See Averyt*, 717 S.W.2d at 893. This interpretation, advanced by Mustang, considers the whole instrument and harmonizes all of the provisions of the Combest Deed.

Toni Combest claims this interpretation violates the *Duhig* Rule, as first enunciated in *Duhig v. Peavy-Moore Lumber Co.*, 135 Tex. 503, 144 S.W.2d 878 (1940). The *Duhig* rule is one of estoppel. *See id.* Under *Duhig*, a grantor and his successors are estopped from claiming title in a reserved fractional mineral interest when to do so would, in effect, breach the grantor's warranty as to the title and interest purportedly conveyed to the grantee. *See id.* at 880-81. In *Duhig*, the granting clause purported to convey all of the land and minerals, and the reservation clause reserved a one-half mineral interest in the grantor, Duhig. *Id.* at 880. The warranty deed failed to mention that Duhig did not own all of the minerals and that a prior owner had also reserved a one-half interest. *See id.* Thus, because the warranty deed did not mention the third-party interest in the minerals, the grantee expected that the conveyance included a one-half mineral interest. The *Duhig* court explained that in this situation, the grantor breaches his warranty in the warranty deed by appearing to convey more than he actually did. *See id.* The court reasoned that because the grantor holds "the very interest, one-half of the minerals, required to remedy the breach," *Duhig*, 144 S.W.2d at 880, the grantor should be "estopped from asserting a claim to that ½ mineral

interest because of the prior outstanding reservation and the deed's purported conveyance of all of the minerals less only a ½ interest." *Gore Oil Co. v. Roosth*, 158 S.W.3d 596, 601 (Tex. App.—Eastland 2005, no pet.) (discussing *Duhig*).

The *Duhig* rule, however, is not applicable in this appeal. The Combest Deed (which is a warranty deed) contained a limiting clause stating that the conveyance was subject to "[t]itle to oil, gas, and other minerals on and under the property, together with all rights of ingress and egress, heretofore transferred or reserved by predecessors." Thus, *Duhig* does not apply and the grantors and their successors in interest are not estopped from claiming title to the full one-half mineral interest. *See Gore Oil*, 158 S.W.3d at 601 (holding that *Duhig* did not apply because the deed "contained an additional limiting clause stating that the conveyance was subject to all outstanding reservations, covenants, and restrictions").

Alternatively, Toni Combest argues that the Combest deed is ambiguous on its face because both her interpretation and Mustang's interpretation are reasonable. She argues that because a fact issue regarding the true intent of the parties is presented, we should reverse the summary judgment and remand the cause for trial so that a fact finder can consider extrinsic evidence of the parties' intent. *See Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996) (explaining that an ambiguity "creates a fact issue on the parties' intent"); *CenterPoint Energy Houston Elec., LLP v. Old TJC Co.*, 177 S.W.3d 425, 430 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) ("To determine the parties' intent, extrinsic evidence is admissible only when an ambiguity appears on the face of the deed . . . .").

Whether a deed is ambiguous is a question of law, which is reviewed de novo. *CenterPoint Energy*, 177 S.W.3d at 430. To determine whether a deed is ambiguous, we look at the deed as a whole and consider the entire deed in an effort to harmonize and to give effect to all the provisions of the deed so that none will be rendered meaningless. *Id.* No single provision will control; rather

all provisions must be considered with reference to the whole instrument. *Id.* If a deed is worded in such a way that it can be given a definite or certain legal meaning, then the deed is not ambiguous. *Id.* at 430-31. A deed is ambiguous only if its meaning is uncertain or if it is subject to two or more reasonable interpretations. *Id.* at 431. In considering the Combest Deed as a whole and harmonizing its provisions, we conclude that the deed does have a definite meaning. *See id.* at 430. As noted, the language of the deed falls under the *King* rule, and Toni Combest's interpretation of the language of the deed being controlled by *Hooks* is not reasonable. *See Lopez v. Munoz, Hockema & Reed, LLP*, 22 S.W.3d 857, 861 (Tex. 2000) (explaining that for an ambiguity to exist, both parties' interpretations must be reasonable). We hold that the Combest Deed is not ambiguous on its face.

## AFFIRMATIVE RELIEF

Finally, Toni Combest argues that because Mustang is a foreign entity and is not currently registered to do business in Texas, it is precluded from receiving a take-nothing judgment in its favor. She argues that pursuant to section 9.001 of the Texas Business Organizations Code, Mustang, a foreign Delaware Limited Liability Company, was required to register with the Texas Secretary of State in order to transact business in Texas. And, she emphasizes that pursuant to section 9.051(b) of the Texas Business Organizations Code, because Mustang is not registered with the Texas Secretary of State, it "may not maintain an action, suit, or proceeding in a court of this state, . . . on a cause of action that arises out of the transaction of business in this state." TEX. BUS. ORGS. CODE ANN. § 9.051(b) (West 2012). Toni Combest argues that Mustang transacted business without registering with the Texas Secretary of State when it attempted to purchase the mineral interest in the Combest Deed.

Even though section 9.051(c)(2) provides that failure of such a foreign entity to register does not prevent the foreign entity from defending an action, suit, or proceeding in a court in Texas,

*see id.* § 9.051(b), Toni Combest nonetheless argues that Mustang is not entitled to a take-nothing judgment in this case. According to Toni Combest, "a general denial or request for relief in a trespass to try title suit is, by the nature of the suit, a request for relief and not a mere defense." Toni Combest cites *Hejl v. Wirth*, 343 S.W.2d 226, 226 (Tex. 1961), for the following proposition: "If the plaintiff under the circumstances fails to establish his title, the effect of a judgment of take nothing against him is to vest title in the defendant. The rule is a harsh one, but it also has been well established as a rule of land law in this State." According to Toni Combest, "[t]his necessarily means that, unlike in other suits, a general denial and receiving a take-nothing judgment is affirmative relief for the defendant in a trespass to try title suit, as if the defendant has asserted a counterclaim for title, not just a mere defense against the claims asserted." We disagree with Toni Combest.

The Texas Business Organizations Code explicitly provides that the "failure of a foreign filing entity to register does not . . . prevent the entity from defending an action, suit or proceeding in a court in this state." TEX. BUS. ORGS. CODE ANN. § 9.051(c)(2) (West 2012). Mustang was merely defending itself in this case from Toni Combest's trespass-to-try-title action by filing its motion for summary judgment. The take-nothing judgment is the result of that motion. Toni Combest's argument, followed to its logical conclusion, would prevent any foreign filing defendant that did not register to do business in Texas from defending itself in a trespass-to-try title suit because, under her reasoning, it could never be awarded a take-nothing judgment. Thus, Toni Combest's argument directly contradicts section 9.051(c)(2) of the Texas Business Organizations Code.

## CONCLUSION

We conclude as a matter of law that the Combest Deed did not convey a mineral interest to Toni and Preston Combest. Thus, the trial court did not err in granting summary judgment in

favor of Mustang. Further, because Mustang is allowed to defend itself under the Texas Business Organizations Code, the trial court did not err in signing a take-nothing judgment in favor of Mustang. The judgment of the trial court against Toni Combest is therefore affirmed.

Karen Angelini, Justice