

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-17-00347-CV

Rita **GONZALEZ** as Trustee of RG Family Trust and Ramon Gonzalez,
Appellants

v.

Don A. **JANSSEN** and Debra Janssen,
Appellees

From the 81st Judicial District Court, Karnes County, Texas
Trial Court No. 15-09-00215-A-CVK
Honorable Russell Wilson, Judge Presiding

Opinion by:     Karen Angelini, Justice

Sitting:        Karen Angelini, Justice
                Marialyn Barnard, Justice
                Rebeca C. Martinez, Justice

Delivered and Filed:  May 30, 2018

REVERSED AND RENDERED

This appeal arises from a declaratory judgment suit involving the ownership of a reversionary royalty interest. The appellants, Rita Gonzalez, as Trustee of the R.G. Family Irrevocable Trust No. 1, and Ramon Gonzalez ("the Gonzalezes"), argued that the appellees, Don A. and Debra Janssen ("the Janssens,") conveyed all their interests in two tracts of land, including Don's undivided share of a reversionary royalty interest, to Ramon Gonzalez Jr. ("Gonzalez") and Ramon Gonzalez, M.D., P.A. Employees Pension Plan and Trust ("the Pension Trust") in two deeds. The Janssens argued Don's undivided share of the reversionary royalty interest was

excluded from the conveyances. After considering competing summary judgment motions, the trial court rendered judgment in favor of the Janssens. Because we conclude that the deeds do not exclude the reversionary royalty interest from the conveyances, we reverse the trial court's judgment and render judgment in favor of the Gonzalezes.

## BACKGROUND

### *The Creation of the Reversionary Royalty Interest, Its Conveyance History, & the Underlying Controversy*

The background facts are undisputed. In 1984, Don's father, C.J. Janssen, acquired a 101.43-acre and a 209.97-acre tract of land and a reversionary royalty interest from Lamar and Rudolph Blaschke. The reversionary royalty interest was created on October 1, 1977, when C.M. Griffin executed a deed conveying the 101.43-acre and the 209.97-acre tract of land to the Blaschkes. In this deed, Griffin reserved to himself an "undivided 1/16th royalty interest;" however, Griffin further stated that the reserved royalty interest would expire in twenty years in the absence of oil and gas production. On December 13, 1985, C.J. conveyed the reversionary royalty interest, in undivided shares, to his four children, Don, David, James, and Michael.[1]

On August 24, 1988, C.J. conveyed to Don and his wife, Debra, a 186.10/209.97 interest in the 209.97-acre tract. C.J. retained ownership of the remainder of the 209.97-acre tract and the 101.43-acre tract, and Don and his siblings continued to own undivided shares of the reversionary royalty interest associated with both tracts.

On September 15, 1988, Don, Debra, C.J., and C.J.'s wife, Olivia, executed two deeds. The first deed ("the 101 deed") conveyed the 101.43-acre tract to Ramon Gonzalez Jr. The 101 deed conveyed "all of the following described real property" "SUBJECT TO" the deed in which Griffin

---

[1]Other conveyances concerning the property occurred, but we list only the conveyances necessary to the issues presented in this appeal.

created the reversionary royalty interest; and "SUBJECT TO" the deed in which Don's father, C.J., conveyed the reversionary royalty interest to Don and his siblings.

The second deed ("the 209 deed") conveyed 209.97 acres to Ramon Gonzalez Jr., M.D., P.A., Employees Pension Plan and Trust. The 209 deed conveyed "all of the following described real property" "SUBJECT TO" the deed in which Griffin created the reversionary royalty interest; "SUBJECT TO" the deed in which Don's father, C.J., conveyed the reversionary royalty interest to Don and his siblings; and "SUBJECT TO" another mineral deed "dated September 3, 1947 from W.F. Krause to William Meyer."

In 1997, the royalty interest that Griffin had reserved to himself in the October 1, 1977 deed expired.

In 2011, Gonzalez entered into an oil and gas lease with EOG. Thereafter, Don made a demand to EOG for payment of his share of the royalties. Don claimed that he did not convey his share of the reversionary royalty interest to Gonzalez in the 1988 deeds and, therefore, this interest reverted to him in 1997. EOG responded to Don's demand by holding the royalty payments in suspense.

### *The Declaratory Judgment Suit*

In 2015, the Gonzalezes filed a declaratory judgment suit, asking the trial court to determine the ownership of the reversionary royalty interest and to resolve the dispute concerning the payment of royalties. The Janssens answered the suit by entering a general denial, asserting the affirmative defense of mutual mistake, and counterclaiming for declaratory relief and reformation of the deeds.

Both sides moved for summary judgment. The Gonzalezes' amended summary judgment motion argued that because the deeds did not explicitly exclude Don's share of the reversionary royalty interest from the grant, it passed to Gonzalez and the Pension Trust in the deeds. The

Gonzalezes took the position that the purpose of the "subject to" clauses in the deeds was not to except or reserve anything from the conveyances, but to place Gonzalez and the Pension Trust on notice of outstanding interests in the chain of title that may affect the interests transferred.

The Janssens' amended summary judgment motion argued, among other things, that the "subject to" clauses in the deeds acted as an exception or a reservation because of the placement of the clauses "before the habendum clause, as part of the section defining the estate conveyed." The Janssens further argued that the deeds were "plainly drafted to limit the estate conveyed, not just the warranty." Alternatively, the Janssens argued that the deeds were ambiguous.

The trial court denied the Gonzalezes' amended summary judgment motion and granted the Janssens' summary judgment motion.[2] Specifically, the trial court found that the 101 deed and the 209 deed "excluded the December 13, 1985, Gift Deed, of the Reversionary Royalty Interest, from both the grant of rights and the warranty." The trial court rendered judgment in favor of the Janssens. The Gonzalezes appealed.

**ARGUMENTS PRESENTED ON APPEAL**

The Gonzalezes contend the trial court rendered summary judgment for the wrong parties. According to the Gonzalezes, the trial court failed to apply basic rules of deed construction and ignored the clear language of the deeds. The Gonzalezes maintain that the "subject to" language in the deeds did not expressly reserve or except the reversionary royalty interest from the grant and, therefore, the reversionary royalty interest passed to Gonzalez and the Pension Trust.

On the other hand, the Janssens argue the trial court correctly granted summary judgment in their favor. The Janssens argue that the only reasonable interpretation of the deeds is that the second "subject to" clause in each of the deeds operated to exclude the reversionary royalty interest

---

[2]The trial court expressly denied the part of the Janssens' amended summary judgment motion arguing mutual mistake. This part of the trial court's ruling is not challenged on appeal.

from the conveyances. According to the Janssens, the second "subject to" clause in the deeds was the "functional equivalent" of an exception clause. Alternatively, the Janssens argue that if we are not persuaded that the only reasonable construction of the deeds is that they excluded Don's share of the reversionary royalty interest from the conveyances, then we should conclude that the deeds are ambiguous and remand the case to the trial court for an evidentiary hearing on ambiguity.

## STANDARD OF REVIEW

We review a trial court's summary judgment de novo. *HCBeck, Ltd. v. Rice*, 284 S.W.3d 349, 352 (Tex. 2009). A party is entitled to summary judgment if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion or in an answer or any other response." TEX. R. CIV. P. 166a(c). In reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When both parties move for summary judgment on the same issues and the trial court grants one motion and denies the other, we consider the summary judgment evidence presented by both sides, determine all questions presented, and if we determine that the trial court erred, render the judgment that the trial court should have rendered. *Id.*; *Whataburger, Inc. v. Whataburger of Alice, Ltd.*, No. 04-16-00085-CV, 2017 WL 2664437, at *4 (Tex. App.—San Antonio June 21, 2017, pet. filed).

## DEED CONSTRUCTION

Whether a deed is ambiguous is a question of law that we review de novo. *Combest v. Mustang Minerals, L.L.C.*, 502 S.W.3d 173, 185 (Tex. App.—San Antonio 2016, pet. denied). In determining whether a deed is ambiguous, we look at the deed as a whole and consider the entire deed in an effort to harmonize and to give effect to all the provisions of the deed so that none will be rendered meaningless. *Id*. An ambiguity does not arise merely because the parties advance

conflicting interpretations of the deed's language; rather, for an ambiguity to exist, both parties' interpretations must be reasonable. *Hausser v. Cuellar*, 345 S.W.3d 462, 467 (Tex. App.—San Antonio 2011, pet. denied). If a deed is worded in such a way that it can be given a definite or certain legal meaning, then the deed is not ambiguous. *Combest*, 502 S.W.3d at 185; *Hausser*, 345 S.W.3d at 467.

The construction of an unambiguous deed is a question of law that we review de novo. *Luckel v. White*, 819 S.W.2d 459, 461 (Tex. 1991). The Texas Supreme Court has reaffirmed that "the paramount" goal in construing a deed is "ascertaining and effectuating the parties' intent" "by conducting a careful and detailed examination of the deed in its entirety, rather than applying some default rule that appears nowhere in the deed's text." *Wenske v. Ealy*, 521 S.W.3d 791, 792 (Tex. 2017). In construing the meaning of a deed, our primary duty is to ascertain the intent of the parties as provided in the four corners of the document. *Luckel*, 819 S.W.3d at 461. Looking within the four corners of the deed, we read the instrument as a whole and give meaning to all its words and parts. *Id*. at 461-62. Once we ascertain the parties' intent as expressed in the language of the deed, our analysis should end. *Wenske*, 521 S.W.3d at 794.

Deeds are construed to confer upon the grantee the greatest estate that the terms of the instrument will allow. *Combest*, 502 S.W.3d at 180; *Ladd v. DuBose*, 344 S.W.2d 476, 480 (Tex. Civ. App.—Amarillo 1961, no writ). A deed will pass whatever interest the grantor has in the land, unless it contains language showing the intention to grant a lesser estate. *Sharp v. Fowler*, 252 S.W.2d 153, 154 (Tex. 1952); *Combest*, 502 S.W.3d at 179. A warranty deed will pass all of the estate owned by the grantor at the time of the conveyance unless there are reservations or exceptions that reduce the estate conveyed. *Combest*, 502 S.W.3d at 179.

Reservations and exceptions in deeds are not synonymous. *Pich v. Lankford*, 302 S.W.2d 645, 650 (Tex. 1957); *Bupp v. Bishop*, No. 04-16-00827-CV, 2018 WL 280408, at *2 (Tex. App.—

San Antonio Jan. 3, 2018, pet. filed). A reservation is made in favor of the grantor and creates a new right issuing out of the conveyance. *Klein v. Humble Oil & Refining Co.*, 67 S.W.2d 911, 915 (Tex. Civ. App.—Beaumont 1934), *aff'd*, 86 S.W.2d 1077 (1935); *Bupp*, 2018 WL 280408, at *2. "A reservation is a taking back by the grantor of a part of the interest being granted." *Bupp*, 2018 WL 280408, at *2. An exception, by contrast, operates to exclude some interest from the grant. *Id*. An exception in a deed is a clause exempting from the operation of the deed and retaining in the grantor the title to some part of the thing granted, or exempting from the operation of the deed some part of the thing granted the title of which is at the time in another. *Klein*, 67 S.W.2d at 915. In sum, a reservation must always be in favor of and for the benefit of the grantor; an exception can be a mere exclusion from the grant. *Pich*, 302 S.W.2d at 650.

Both reservations and exceptions in deeds must be clear and specific. *Texas Independent Exploration, Ltd. v. Peoples Energy Production-Texas, L.P.*, No. 04-07-00778-CV, 2009 WL 2767037, at *10 (Tex. App.—San Antonio August 31, 2009, no pet.). Reservations must be made by clear language; courts do not favor reservations by implication. *Sharp*, 252 S.W.2d at 154; *Combest*, 502 S.W.3d at 179. Exceptions, which generally are strictly construed against the grantor, must identify, with reasonable certainty, the property to be excepted from the larger conveyance. *Combest*, 502 S.W.3d at 179-80.

## DISCUSSION

Here, the Gonzalezes and the Janssens agree, at least initially, that the deeds are unambiguous. Additionally, the Gonzalezes and the Janssens agree that we must ascertain the parties' true intentions as expressed in the four corners of the deeds. Therefore, we begin our analysis by examining the language in the deeds themselves.

### *The 101 Deed*

The 101 deed conveyed the 101.43-acre tract to Ramon Gonzalez Jr. It provided, in relevant part, that Don, Debra, C.J., and Olivia:

[D]o GRANT, SELL AND CONVEY unto RAMON GONZALEZ, JR., . . . all of the following described property in Karnes and Gonzales Counties, Texas, to wit:

All that certain lot, tract or parcel of land, being 101.43 acre tract situated in… [legal description]

SUBJECT TO One-half (1/2) Royalty Reservation reserved om [sic] Deed dated October 1, 1977, from the Estate of Sidney S. Griffin, deceased, to Lamar R. Blaschke and Rudolph T. Blaschke, and recorded in Volume 469, Page 621, Deed Records of Karnes County, Texas.

SUBJECT TO Terms, conditions and stipulations of that Royalty Deed dated December 13, 1985, from C.J. Janssen et ux to James C. Janssen et al, recorded in Volume 559, Page 251, Deed Records of Karnes County, Texas.

TO HAVE AND TO HOLD the above described premises, together with all and singular the rights and appurtenances thereto in anywise belonging, unto the said grantee, his heirs and assigns forever; and we do hereby bind ourselves, our heirs, executors and administrators to WARRANT AND FOREVER DEFEND all and singular the said premises unto the said grantee, his heirs and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof.

### *The 209 Deed*

The 209 deed conveyed 209.97 acres to Ramon Gonzalez Jr., M.D., P.A., Employees Pension Plan and Trust. It provided, in relevant part, that Don, Debra, C.J., and Olivia:

[D]o GRANT, SELL, AND CONVEY unto RAMON GONZALEZ, Jr., M.D., P.A., EMPLOYEES PENSION PLAN AND TRUST…all of the following described real property in Karnes and Gonzales Counties, Texas, to wit:

TRACT NO. 1: All that certain lot, tract or parcel of land, being a 126.28 acre tract situated in…[legal description].

TRACT NO. 2: All that certain lot, tract or parcel of land, being 83.69 acres of land situated in…[legal description].

SUBJECT TO One-half (1/2) Royalty Reservation as set out in instrument dated October 1, 1977, from the Estate of Sidney S. Griffin, deceased, to Lamar R.

Blaschke and Rudolph T. Blaschke, and recorded in Volume 469, Page 621, Deed Records of Karnes County, Texas.

SUBJECT TO Royalty Interest as set out in instrument dated Decmeber [sic] 13, 1985, from C.J. Janssen et ux to James C. Janssen et al, recorded in Volume 559, Page 251, Deed Records of Karnes County, Texas.

SUBJECT TO Mineral Deed dated September 3, 1947, from W.F. Krause to William Meyer, recorded in Volume 170, Page 425, Deed Records of Karnes County, Texas, as to Tract 2 Only.

TO HAVE AND TO HOLD the above described premises, together with all and singular the rights and appurtenances thereto in anywise belonging, unto the said grantee, its successors and assigns forever; and we do hereby bind ourselves, our heirs, executors and administrators to WARRANT AND FOREVER DEFEND all and singular the said premises unto the said grantee, its successors and assigns, against every person whosoever lawfully claiming or to claim the same or any part thereof.

Both deeds show that Don and the others conveyed "*all* of the following described real property" and "*[a]ll* that lot, tract or parcel of land" described. (Emphasis added). Both deeds specifically describe the tracts conveyed by way of legal descriptions. Thereafter, both deeds state that the conveyances of "all" of the real property described are "subject to" other interests. The 101 deed says the real property is conveyed "subject to" the "One-half (1/2) Royalty Reservation reserved om [sic] Deed dated October 1, 1977" and "subject to" the "[t]erms, conditions and stipulations of that Royalty Deed dated December 13, 1985." Thus, the 101 deed refers to two other deeds: the initial deed that created the reversionary royalty interest and the deed that conveyed that interest to Don and his siblings. The 209 deed says the real property is conveyed "subject to" the "One-half (1/2) Royalty Reservation as set out in instrument dated October 1, 1977," "subject to" the "Royalty Interest as set out in instrument dated Decmeber [sic] 13, 1985," and "subject to" a "Mineral Deed dated September 3, 1947." Thus, the 209 deed refers to three other deeds: the initial deed that created the reversionary royalty interest, the deed that conveyed that interest to Don and his siblings, and another deed that is apparently not related to the reversionary royalty interest at issue in this case. Finally, the habendum clauses in both deeds state:

"TO HAVE AND TO HOLD the above described premises, *together with all and singular the rights and appurtenances thereto in anywise belonging,* unto the said grantee, its successors and assigns forever…." (Emphasis added).

Giving the deeds' words their plain meaning, reading them in their entirety, and harmonizing all of their parts, we cannot construe them as excluding Don's share of the reversionary royalty interest from the conveyances. The deeds state that the grantors, including Don, are conveying "all" of their interest in the real property described. Furthermore, both deeds' habendum clauses state that the grantors, including Don, are transferring to Gonzalez and the Pension Trust "all" "the rights and appurtenances in anywise belonging" to them in the premises described. Neither deed includes any language excluding Don's undivided share of the reversionary royalty interest from the conveyances or any language showing that Don was retaining any interest that he had in the real property.

The words "subject to" used in their ordinary sense, mean subordinate to, subservient to, or limited by. *Wenske*, 521 S.W.3d at 796. Although the Texas Supreme Court has recognized that "subject to" clauses are widely used for other purposes, the principal function of a "subject to" clause in a deed is to protect a grantor against a claim for breach of warranty when some mineral interest is already outstanding. *Id*. In this case, nothing in the four corners of the deeds shows that the parties intended the "subject to" clauses to operate differently or to serve a purpose other than informing the grantees that other interests were still outstanding.

The Janssens argue that the second "subject to" clause in each deed operates to exclude from the conveyances Don's undivided interest in the reversionary royalty interest. But we cannot adopt such a construction because it would require us to conclude that the second "subject to" clauses function differently from the other "subject to" clauses. In both deeds, the "subject to" clauses are grouped together. The 101 deed contains two "subject to" clauses, and the 209 deed

contains three "subject to" clauses. The first "subject to" clause in each of the deeds refers to the initial deed that created the reversionary interest. The second "subject to" clause in each of the deeds refers to the deed that conveyed the reversionary royalty interest to Don and his siblings. The 209 deed contains a third "subject to" clause, which refers to another deed that apparently has no connection to the reversionary royalty interest in this case. The only way to construe all of the "subject to" clauses in a consistent manner is to conclude that all of the "subject to" clauses were intended to inform the grantees of other outstanding interests that burdened the properties conveyed.

The Janssens also criticize the Gonzalezes for using the word "reservation" in their appellate briefing. The Janssens argue that because the reversionary royalty interest had already been defined, created, vested, and recorded in the gift deed to Don and his siblings, Don did not need to use a reservation clause in the deeds because he was not creating a new interest. The Janssens further argue that the second "subject to" clause in the deeds was the "functional equivalent" of an "exception" clause. We are not persuaded by these arguments. First, the Janssens construe the Gonzalezes' argument too narrowly. In their amended summary judgment motion the Gonzalezes argued that Don's share of the reversionary royalty interest passed to Gonzalez and the Pension Trust because the deeds did not contain either a "reservation or an exception from the grant." Second, both reservations and exceptions in deeds must be made by clear and specific language. *See Texas Independent Exploration*, 2009 WL 2767037, at *10. Here, the deeds show that Don did not use clear and specific language to exclude his share of the reversionary royalty interest from the conveyances.

The Janssens further argue that Don was not required to use "magic words" to exclude his share of the undivided reversionary royalty interest from the conveyance. We agree that Don was not required to use "magic words" or particular language to have excluded his share of the

undivided reversionary royalty interest from the conveyances. However, Don was required to use *some* language to show that he was retaining and not conveying his share of the undivided reversionary royalty interest. *See Klein*, 67 S.W.2d at 916-17; *Combest*, 502 S.W.3d at 179-80. Because the deeds before us contain no language excluding Don's share of the reversionary royalty interest from the conveyances, we cannot conclude that the parties intended to exclude it from the conveyances.

Additionally, in their amended summary judgment motion, the Janssens argued that the location of the second "subject to" clause in the deeds showed that Don's share of the reversionary royalty interest was excluded from the conveyances. The Janssens relied on *Bass v. Harper*, 441 S.W.2d 825 (Tex. 1969), to support this argument. In *Bass*, the deed provided that (1) the grantor granted, sold, and conveyed to the grantee all of that certain undivided one-half interest in a tract of land; (2) described the land; (3) stated "this Grant is Subject to the Mineral Reservation contained in the following deeds;" (4) listed nine deeds from various people to the grantor in which royalty interests had been reserved, including the page and volume number showing the deeds had been recorded; (5) and included a habendum clause and a warranty clause. *Id*. at 826. Both the trial court and the court of appeals construed the words in the deed as limiting the warranty and not the grant, and therefore, concluded that the mineral interests had been conveyed to the grantee. *Id*. at 825, 828. The supreme court, however, concluded that the words in the deed showed that the parties intended to limit the grant rather than the warranty and, therefore, the outstanding interests were not conveyed. *Id*. at 827-28.

The Texas Supreme Court recently re-examined *Bass*. *Wenske*, 521 S.W.3d at 794-95. Although the supreme court did not overrule *Bass*, it did state that *Bass*'s reasoning "should remain limited to the specific wording of the instrument in that case" and "courts and practitioners should view *Bass* as limited to the specific language at issue in that case." *Id*. at 795. The deed in *Bass*

provided: "*This Grant is Subject to* the Mineral Reservation contained in the following Deed(s)…." (Emphasis added). *Bass*, 441 S.W.2d at 826. Thus, in *Bass* the "subject to" clause was "tied specifically to the grant." *Wenske*, 521 S.W.3d at 795; *Bass*, 441 S.W.2d at 827. Unlike the deed in *Bass*, the deeds in this case contain no language tying the "subject to" clauses to the grant; instead, the "subject to" clauses simply follow the property descriptions. Because *Bass* is limited to the specific wording of the instrument in that case, we conclude that it is not controlling here. *See Wenske*, 521 S.W.3d at 795.

Considering the deeds as a whole, we conclude that the "subject to" clauses do not exclude anything from the conveyances, but instead merely refer to encumbrances on the properties, and explain and clarify the nature of the title being conveyed. *See Texas Independent Exploration*, 2009 WL 2767037, at *5 ("Conveying land 'subject to' defined interests is [] a means of providing notice of outstanding interests that may affect a grantee's title."); *Freeman v. Southland Paper Mills, Inc.*, 573 S.W.2d 822, 824 (Tex. Civ. App.—Beaumont 1978, writ ref'd n.r.e.) (concluding that "subject to" clause in a deed did not expressly except any portion of the conveyed land but merely made the conveyance subject to any leases or other instruments affecting the land). As previously discussed, this construction allows for a consistent and harmonious interpretation of the "subject to" clauses in the deeds.

We conclude that the four corners of the deeds show that Don conveyed all his interest in the real property, including his undivided share of the reversionary royalty interest, to Gonzalez and the Pension Trust. We further conclude the deeds have definite meanings and, therefore, are unambiguous.

In the present case, the unambiguous deeds show that Don conveyed all his interest in the real property, including his undivided share of the reversionary royalty interest, to Gonzalez and the Pension Trust. Therefore, we conclude the trial court erred in construing the deeds to exclude

Don's undivided share of the reversionary royalty interest from the conveyances, and in granting the Janssens' amended summary judgment motion on this ground.

The Gonzalezes argue the trial court should have granted their amended summary judgment motion because they established, as a matter of law, that Gonzalez and the Pension Trust owned the reversionary royalty interest. When properly construed, the deeds establish, as a matter of law, that the Janssens conveyed all their interests in the two tracts of land, including Don's undivided share of a reversionary royalty interest, to Gonzalez and the Pension Trust. We, therefore, conclude the trial court erred in denying the Gonzalezes' amended summary judgment motion.

## CONCLUSION

We reverse the trial court's judgment and render judgment denying the Janssens' amended summary judgment motion, granting the Gonzalezes' summary judgment motion, and declaring that (1) Don A. Janssen's undivided share of the reversionary royalty interest passed to the grantees, Ramon Gonzalez Jr. and Ramon Gonzalez, M.D., P.A. Employees' Pension Plan and Trust, in the September 15, 1988 deeds, and (2) Don A. Janssen holds no royalty interest in any mineral or royalty associated with the September 15, 1988 deeds.

Karen Angelini, Justice